20041

Irwin Lynn HAMBY, Respondent, v. Linda Snelson HAMBY, natural mother of Shelley Denise Snelson; Shelley Denise Snelson, a minor under the age of Fourteen (14) years, and Robert David Snelson, natural father of Shelley Denise Snelson, of whom Robert David Snelson is, Appellant.

(216 S. E. (2d) 536)

*Edward A. Harter, Jr., Esq.,* of Columbia, *for Appellant,*

*James R. Barber, III, Esq.,* of Columbia, *for Respondent,*

June 18, 1975.

LEWIS, Justice:

This is an adoption proceeding, brought pursuant to Section 10-2587.1 *et seq.* of the 1962 Code of Laws, as amended.

The sole question to be decided is whether the lower court was in error in holding that appellant, the natural father, abandoned his child so as to permit her adoption without his written consent. There is no dispute as to the governing legal principles. The issues are primarily factual.

It is necessary, therefore, to determine, at the outset, the extent of our review of the factual findings of the lower court.

Code Section 10-2587.16 provides for an appeal from any final order in an adoption proceeding "'in the manner provided for appeals from such court in other civil matters." While an adoption proceeding is statutory, *Driggers v. Jolley,* 219 S. C. 31, 64 S. E. (2d) 19, it is equitable in nature and review of judgments in such cases is controlled, in general, by the principles which govern review of judgments in equity matters.

Accordingly, the findings of fact by the trial judge will not be disturbed by this Court unless it appears that such findings are without evidentiary support or are against the clear preponderance of the evidence. However, this principle must be applied in the light of our holding in *Bevis v. Bevis,* 254 S. C. 345, 175 S. E. (2d) 398, that "in determining matters of this kind a wide discretion must be allowed the trial judge who sees and observes the parties and, of necessity, acquires a peculiar knowledge and comprehension of the situation from close contact with it."

The defendants Linda Snelson (now Hamby) and Robert David Snelson were married in January 1965 and the child involved in this proceeding was born to them on August 18, 1965. They were separated at the time of the birth of the child and apparently never lived together again. The marriage ended in divorce on November 27, 1968. The court granted custody of the child to the mother and visitation rights to the father and required the father to provide support. The mother subsequently married the plaintiff, Irwin Lynn Hamby, on February 20, 1969, and the child has lived with the mother and stepfather since that time, apparently adjusting well in the new home.

This action was instituted by the plaintiff-stepfather in March 1974 to adopt the child of his wife by the prior mar-

riage. The natural father refused to give his consent to the adoption but, after hearing the testimony, the trial judge concluded that the father had abandoned the child, making it unnecessary to have his consent. This appeal by the natural father challenges the finding that he had abandoned his child.

Recognizing that the question of abandonment is largely one of intent to be determined in each case from all the facts and circumstances, we have held that, "abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child," 2 Am. Jur. (2d), Adoption, Section 32; but "does not include an act or course of conduct by a parent which is done through force of circumstances or dire necessity," 2 Am. Jur. (2d), Adoption, Section 33. *Bevis v. Bevis, supra,* 254 S. C. 345, 175 S. E. (2d) 398; *McCormick v. McMurray,* 260 S. C. 452, 196 S. E. (2d) 642.

The child was nine (9) years of age at the time of the hearing in this matter in the lower court, and the father has been in prison for the greater portion of the time since her birth. He was first placed in jail in August 1966, about one year after the child was born, and remained there until June 7, 1968. Other than for the first month after the child's birth, the father has never contributed to its support. Although given visitation rights he visited the child very little. After the first jail sentence, he was out of prison for about seven (7) months and then sentenced to a second term from January 1969 to March 18, 1971. During the seven (7) month period between the first and second jail terms, he saw his child about three times and, according to the mother, he was drinking on those visits.

The father said that he last saw his daughter in September 1968, between his first and second jail terms.

After the father's release from his second imprisonment on March 18, 1971, he was sentenced to a third term beginning April 29, 1971 and ending in April 1975. He was in prison when the hearing was held in the lower court.

The mother testified that the only correspondence received by the child from the father during his time in prison was a Christmas card in 1971 and a letter in October 1973, about five (5) months prior to the institution of this action.

While the father testified that he placed his child on his mailing list while he was in jail and that his failure to contact her was due, in part, to the fact that the mother took the child with her and her second husband to Germany for a period of time after August 1969, his explanation of his failure to exhibit parental care and to discharge his duty to support his child was, primarily, that his confinement in prison for most of the last nine (9) years prevented him from doing so.

Under all of the facts and circumstances, we cannot say that the finding by the lower court, that the father abandoned his child, is against the preponderance of the evidence. The record does not show the nature of the offenses for which the father was confined, but it does show that his three (3) jail terms followed each other, after short intervening periods of freedom. His actions during the periods of freedom indicated little, if any, concern for his child. He not only failed to indicate parental care, but voluntarily pursued a course of lawlessness which resulted in his imprisonment and inability to perform his parental duties. This lack of concern was further exhibited in his failure, while in jail, to write or communicate with the child, except on two isolated occasions.

The father's voluntary acts which resulted in his repeated imprisonment, his failure to support the child, and his negligible contact with the child through the years support the inference that he was guilty of such conscious disregard of

indifference to his parental obligations as to evince a settled purpose to forego his obligations and duties to his child. Such supports a finding of abandonment, rendering his consent to the adoption unnecessary.

The judgment is accordingly affirmed.

Moss, C. J., and BUSSEY, LITTLEJOHN and NESS, JJ., concur.