543 S.E.2d 580

SOUTH CAROLINA DEPARTMENT OF
SOCIAL SERVICES, Respondent,

v.

Laquaitta Lavestine WILSON; Willie Jerome Wilson, Jr.; John
Doe, whose true name is unknown; Willie Jerome Wilson, III
(DOB 06–11–91); Christopher Elmansion Wilson (DOB 12–29–
92); and Wilshawn Shyheim Wilson (DOB 08–30–94), Defen-
dants,

of which Willie Jerome Wilson, Jr. is the, Appellant.

No. 3313.

Court of Appeals of South Carolina.

Heard Sept. 13, 2000.
Decided March 5, 2001.

Warren A. Kohn, of Columbia, for appellant.

John J. Hearn, of Columbia, for respondent.

HOWARD, Judge.

Willie Jerome Wilson, Jr., an inmate in the South Carolina Department of Corrections, appeals the order of the family court terminating his parental rights to his minor children, Willie Jerome Wilson, III, Christopher Elmansion Wilson, and Wilshawn Shyheim Wilson. We reverse.

## FACTS/PROCEDURAL HISTORY

Willie Wilson ("the father") and Laquitta Wilson ("the mother") are the parents of Willie Jerome Wilson, III, born June 11, 1991; Christopher Elmansion Wilson, born December 29, 1992; and Wilshawn Shyheim Wilson, born August 30, 1994. The father was convicted of distribution of cocaine in 1995 and sentenced to sixteen years imprisonment. He has been incarcerated continuously since 1995 and is scheduled for release on November 16, 2001.

Two years after the father was incarcerated, all three children were placed into emergency protective custody with the South Carolina Department of Social Services ("SCDSS") as a result of physical neglect by the mother. The family court thereafter reviewed this case every six months, and the father was present at these review hearings. Although he requested an opportunity to visit with his children after each review, SCDSS did not permit visitation between the father and his children. Thus, the father has not seen his children in three years. During a review held on December 18, 1997, the

family court ordered the father to pay child support "as able" through the Richland County Family Court.

On January 29, 1998, SCDSS filed this action for termination of parental rights against the mother, the father, and John Doe. SCDSS alleged the father's parental rights should be terminated because he failed to visit and support the children for a six-month period immediately preceding the commencement of the action.

On April 11, 1999, the family court ordered the termination of the parental rights of all the parties for failure to visit and for failure to support the children. The father appeals this termination.

## STANDARD OF REVIEW

In a termination of parental rights case, the appellate court has jurisdiction to review the entire record to determine the facts in accordance with its view of the evidence. *Richland County Dep't of Soc. Servs. v. Earles*, 330 S.C. 24, 496 S.E.2d 864 (1998). This Court may review the record and make its own findings as to whether clear and convincing evidence supports termination. *South Carolina Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 413 S.E.2d 835 (1992).

## LAW/ANALYSIS

On appeal, the father asserts the family court erred in terminating his parental rights for failure to support or visit his children. We agree.

The termination of parental rights is governed by statute. Code section 20–7–1572 provides for termination of parental rights where one or more of the following grounds are present:

(3) The child has lived outside the home of either parent for a period of six months, and during that time the parent has *wilfully* failed to visit the child. The court may attach little or no weight to incidental visitations, but it *must be shown that the parent was not prevented from visiting by the party having custody* or by court order. The distance of the child's placement from the parent's home must be taken into consideration when determining the ability to visit;

(4) The child has lived outside the home of either parent for a period of six months, and during that time the parent has *wilfully* failed to support the child. Failure to support means that the parent has failed to make a material contribution to the child's care. A material contribution consists of either financial contributions *according to the parent's means* or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means. The court may consider all relevant circumstances in determining whether or not the parent has wilfully failed to support the child, including requests for support by the custodian and *the ability of the parent to provide support.*

S.C.Code Ann. § 20–7–1572 (Supp.2000) (emphasis added).

Whether a parent's failure to visit or support a child is wilful is a question of intent to be determined by the facts and circumstances of each case. *Broome*, 307 S.C. at 52, 413 S.E.2d at 838. Our supreme court has defined wilfulness as "[c]onduct of the parent which evinces a settled purpose to forego parental duties ... because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." *Id.* at 53, 413 S.E.2d at 839. Generally, the family court is given wide discretion in making this determination. However, the element of wilfulness must be established by clear and convincing evidence. *Id.* at 52, 413 S.E.2d at 838.

Assuming that one or both of these requirements enumerated within section 20–7–1572 have been met, the family court must also make a finding that the termination of parental rights is in the best interest of the child. S.C.Code Ann. § 20–7–1572 ("The family court may order the termination of parental rights upon a finding of one or more of the following grounds and a finding that termination is in the best interest of the child...."). Our supreme court recently emphasized that the courts of this state have for many years decided "all matters involving the custody or care of children in 'light of the fundamental principle that the controlling consideration is the best interests of the child.'" *Hooper v. Rockwell*, 334 S.C. 281, 295, 513 S.E.2d 358, 366 (1999) (quoting *In Re Doran*, 129 S.C. 26, 31, 123 S.E. 501, 503 (1924)). As the court noted, the Legislature has placed an increasing

emphasis on the best interests of the child in abuse and neglect cases as well. *Id.* Furthermore, "[t]he public policy of this state in child custody matters is to reunite parents and children." *Id.* at 296, 513 S.E.2d at 366. "When reunification is not possible or appropriate and a party moves to terminate the parents' rights, that party must prove a ground for termination of parental rights by clear and convincing evidence." *Id.*

Citing *Hamby v. Hamby*, 264 S.C. 614, 216 S.E.2d 536 (1975), SCDSS argues that the father's voluntary pursuit of lawless conduct, resulting in his incarceration, is a sufficient basis for termination because the criminal conduct was wilful and naturally leads to the inability to visit or support the child during the term of incarceration. Therefore, the failure to visit or support the child is, itself, wilful. We disagree with this interpretation of section 20–7–1572 and *Hamby*.

In *Hamby*, our supreme court affirmed the family court's findings of abandonment. 264 S.C. at 614, 216 S.E.2d at 536. While the *Hamby* court did recognize that the father had "voluntarily pursued a course of lawlessness which resulted in his imprisonment and inability to perform his parental duties," the court also examined the parent-child relationship and lack of contact not only during the father's incarceration, but also during the period before his incarceration and during the father's short intervening periods of freedom. *Id.* at 618, 216 S.E.2d at 538. The basis of the court's conclusion that the father had displayed a settled purpose to forego his parental duties was not confined to the voluntary nature of the criminal act and its natural consequences. The court's analysis included consideration of all of the surrounding circumstances reflected in the record, including the nature of the parent-child relationship during times when the father was not incarcerated. *Id.* at 618–19, 216 S.E.2d at 538–39; *see also Dep't of Soc. Servs. v. Henry*, 296 S.C. 507, 509, 374 S.E.2d 298, 299–300 (1988) (finding "voluntary pursuit of a course of lawlessness resulting in imprisonment, coupled with flagrant indifference towards the children during intervening periods of freedom, manifest[ed] abandonment of the [children]").

The father argues that the family court erred in terminating his parental rights for wilful failure to visit the children for a period of six months. We agree.

Section 20–7–1572(3) specifically provides that in order for parental rights to be terminated for failure to visit "it must be shown that the parent was not prevented from visiting by the party having custody." S.C.Code Ann. § 20–7–1572(3) (Supp. 2000). In this case, the family court concluded that SCDSS prevented the father from visiting the children based solely upon his incarceration. We agree with this conclusion. The record contains overwhelming evidence that SCDSS not only refused to facilitate visitation, it actually took an active role in preventing the father from visiting his children. Despite the father's repeated requests, the caseworkers refused to allow visitation both at the correctional facility and after the review hearings. SCDSS now asserts that its refusal to arrange visitation was based on a therapist's recommendation, although the father was denied visitation with his children for at least six months before the therapist drafted this recommendation. Therefore, we find this reasoning to be unconvincing.

Despite the conclusion SCDSS prevented visitation, the family court nevertheless terminated the father's parental rights based upon a failure to visit because the father did not write or communicate with the children during his incarceration. We conclude this was error. Section 20–7–1572(3) specifically provides that in order for parental rights to be terminated "it must be shown that the parent was not prevented from visiting by the party having custody." S.C.Code Ann. § 20–7–1572(3). Having found that SCDSS actively prevented visitation between the father and his children, the statutory requirement of section 20–5–1572(3) has not been met.

 The father next argues the family court erred in terminating his parental rights for wilful failure to support the children for a period of six months. We agree.

In the judicial review order of December 18, 1997, the family court ordered the father to "pay support as able." The uncontradicted testimony of the father was that prison policies prevent him from earning any income while incarcerated and he has no other source of income. SCDSS provided no evidence that the father had any outside means with which to support the children.

 Section 20–7–1572(4) specifically states that financial contributions are required "according to the parent's means"

and that, when considering whether a parent has failed to support the child, the court may consider "the ability of the parent to provide support." S.C.Code Ann. § 20–7–1572(4) (Supp.2000). The family court found that the father earned no wages and was unable to earn income while employed in prison. The family court further noted that no family member had made any contribution to the support of the children on the father's behalf. Without considering the father's ability to pay or whether the failure to support the children was wilful, the family court terminated the father's parental rights on this failure. We conclude this was error. To determine whether a parent's failure to support or visit during the time of incarceration evinces a settled purpose to forego parental responsibilities requires a comprehensive analysis of all of the facts and circumstances. *See Hamby,* 264 S.C. at 614, 216 S.E.2d at 536; *Henry,* 296 S.C. at 507, 374 S.E.2d at 298.

The father has been incarcerated at Evans Correctional Center since 1995, which was before the children were taken into emergency protective custody by SCDSS. There is no evidence in the record that the father failed in his parental responsibilities to support or provide the children with a stable home prior to his incarceration. The uncontradicted testimony of the father is to the contrary.

As to the parent-child relationship after the parent's incarceration, the mother brought the children to the prison during the early portion of the father's incarceration. These visitations ended when SCDSS took custody of the children. The father has repeatedly attempted to sustain his relationship through requested visitation, which SCDSS has thwarted. The father has displayed his concern and desire to plan for the children by calling SCDSS on several occasions in an attempt to facilitate placement of the children with his parents. Although there is no evidence in the record that the father sent cards, letters, or anything of value to the children, the father's undisputed testimony is that he is not permitted to receive any income from his prison employment. SCDSS did not attempt to verify or contradict this assertion. Furthermore, SCDSS has provided no evidence the father has an outside means of providing support.

We conclude the record does not support a finding by clear and convincing evidence that the failure to visit or support the

children was wilful. The statutory requirements of section 20–7–1572 to permit termination of parental rights have not been met. When all of the surrounding facts and circumstances are considered, the evidence does not clearly and convincingly prove the father has "evince[d] a settled purpose to forego [his] parental duties." *Broome*, 307 S.C. at 53, 413 S.E.2d at 839.

Although we conclude the underlying statutory basis for terminating the father's parental rights has not been established, we hasten to point out that, even if the basis did exist, the record is woefully lacking in evidence from which a valid conclusion could be reached as to what is in the best interests of the children.

## CONCLUSION

 Terminating the parental rights of an incarcerated parent requires consideration of all of the surrounding facts and circumstances in the determination of wilfulness. The voluntary pursuit of lawless behavior is one factor which may be considered, but generally is not determinative. In this case, SCDSS has failed to prove a basis under section 20–7–1572 for termination of the father's parental rights by clear and convincing evidence. Therefore, the order of the family court terminating the father's parental rights is

**REVERSED.**

STILWELL and SHULER, JJ., concur.