THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
South Carolina Department of Social Services, Respondent,
v.
Tamara Thomas and Craig Rolen, Defendants,
of whom Craig Rolen is Appellant.
In the Interest of Savannah Rolen, DOB 6/16/01, John Doe and Jane Doe,
Respondents,
v.
Baby Girl Roe, a minor under the age of fourteen (14) years, South Carolina 
 Department of Social Services, Tamara Thomas, and Craig Rolen, Defendants,
of whom Craig Rolen is Appellant.
 
 
 

Appeal From Greenville County
 Stephen S. Bartlett, Family Court Judge

Unpublished Opinion No. 2005-UP-055
Submitted December 1, 2004  Filed January 
 21, 2005   

AFFIRMED

 
 
 
Boyd B. Nicholson, Jr., of Greenville, for Appellant.
Rebecca Rush Wray and Robert D. Moseley, Jr., both of Greenville, for Respondents.
Carol Anne Simpson, of Greenville, for Guardian Ad Litem.
 
 
 

PER CURIAM:  This appeal involves the termination of the parental rights 
 of an incarcerated parent.  Craig Rolen (Father) appeals the family courts 
 decision to terminate his parental rights and its issuance of a restraining 
 order against him.  We affirm. [1] 
FACTS         
Father and Tamara Thomas (Mother) conceived a child 
 out of wedlock, Baby Girl Roe, who was born on June 16, 2001.  DSS took Baby 
 Girl Roe into protective custody shortly after birth because she tested positive 
 for crack cocaine.  Mother and Father later testified they used crack cocaine 
 together during the pregnancy and Mother testified that Father was addicted 
 to drugs and continued to use crack cocaine after the birth.  DSS placed Baby 
 Girl Roe in emergency foster care on June 22, 2001.  At the removal hearing, 
 Father agreed to a treatment plan that required him to set and keep an appointment 
 to be evaluated for substance abuse by the Alcohol and Drug commission, and 
 to submit to a hair strand drug test.  After the permanency planning hearing, 
 the family court ordered Father to attend a drug program.  Father failed to 
 comply with the treatment plan, and Baby Girl Roe remained in foster care.  

Father was on probation at the time of Baby Girl Roes birth; however, Fathers 
 probation was revoked on September 17, 2001 and he was incarcerated.  Although 
 the record is somewhat unclear, Father visited Baby Girl Roe on one occasion, 
 at most, before his incarceration.  While incarcerated, Father tried to arrange 
 visits, but DSS refused to allow visitation at the prison.  
On May 21, 2002, John and Jane Doe, Baby Girl Roes foster parents, 
 filed an action seeking to terminate the parental rights of Father and Mother 
 and to adopt Baby Girl Roe.  Several days later, DSS filed a notice of permanency 
 planning hearing in which it made no recommendation as to its preferred outcome.  
 Father answered the Does amended complaint and contested the termination of 
 his parental rights.  Thereafter, the family court consolidated both actions 
 and the case proceeded to trial on March 27, 2003.  
By order dated April 11, 2003, the family court terminated the parental rights 
 of Father and accepted the relinquishment of parental rights of Mother.  The 
 order found several grounds for terminating parental rights.  First, Father 
 willfully failed to visit or support the child for a period of six months.  
 Second, Father had a diagnosable condition, addiction to crack cocaine, which 
 made him unable to provide minimally acceptable care for the child.  Third, 
 Baby Girl Roe had been in foster care for more than fifteen of the last twenty-two 
 months.  Finally, the court found termination was in the best interests of the 
 child.  
The family court noted Father was unable to visit or support because he was 
 incarcerated; however, it found he pursued a willful course of lawless conduct 
 that resulted in his incarceration and failed to visit or support Baby Girl 
 Roe during the three months he was not incarcerated.  Additionally, the court 
 issued a restraining order against Father, ordering him not to contact or otherwise 
 harass Baby Girl Roe, the foster family, Mother, or any DSS employee except 
 in carrying out business with DSS and the clerk of courts office.  
Father filed a motion to reconsider, or in the alternative, to amend the judgment.  
 Father contended he was unable to visit or support Baby Girl Roe due to his 
 incarceration, and DSS prohibited any visitation after he was incarcerated.  
 Father also argued there was insufficient evidence to support the finding he 
 had a diagnosable condition.  The family court denied the motion.  Father appeals.   

STANDARD OF REVIEW
In a termination of parental rights (TPR) case, this court may review the record 
 and make its own findings whether clear and convincing evidence supports termination.  
 South Carolina Dept of Soc. Servs. v. Parker, 336 S.C. 248, 254, 
 519 S.E.2d 351, 354 (Ct. App. 1999).  The appellate court has jurisdiction to 
 examine the entire record to determine the facts according to its view of the 
 evidence.  Richland County Dept of Soc. Servs. v. Earles, 330 
 S.C. 24, 32, 496 S.E.2d 864, 868 (1998).  However, our broad scope of review 
 does not require us to disregard the findings below or ignore the fact the trial 
 judge was in a better position to assess the credibility of the witnesses. Dorchester 
 County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 
 476, 480 (Ct. App. 1996).
LAW/ANALYSIS
I.  Termination of Parental Rights          
Father argues the family court erred in terminating his parental 
 rights.  We affirm the termination of parental rights on the grounds Father 
 willfully failed to support his child, had a diagnosable condition that made 
 him unable to provide minimally acceptable care for his child, and the termination 
 was in the best interests of the child.
A.  Willful Failure to Support
Father argues the family court lacked clear and convincing evidence 
to terminate his parental rights on the ground he willfully failed to support 
Baby Girl Roe.  We disagree. 
Section 20-7-1572 (Supp. 2003) of the South Carolina Code governs 
 TPR.  Pursuant to that section, parental rights may be terminated upon showing 
 one or more enumerated grounds and a finding the termination is in the best 
 interests of the child.  Under section 20-7-1572(4) parental rights may be terminated 
 where: 

(4) The child has lived outside the home of either parent for a period of six 
 months, and during that time the parent has willfully failed to support the 
 child.  Failure to support means that the parent has failed to make a material 
 contribution to the childs care.  A material contribution consists of either 
 financial contributions according to the parents means or contributions of 
 food, clothing, shelter, or other necessities for the care of the child according 
 to the parents means.  The court may consider all relevant circumstances in 
 determining whether or not the parent has willfully failed to support the child, 
 including requests for support by the custodian and the ability of the parent 
 to provide support. 

  S.C. Code Ann. § 20-7-1572 (Supp. 2003).
The statute 
requires a finding of willfulness. Whether a parents failure to visit or support a child is willful 
 is a question of intent to be determined by the facts and circumstances of each 
 case.  South Carolina Dept of Soc. Servs. v. Broome, 307 S.C. 
 48, 52, 413 S.E.2d 835, 838 (1992).  Our supreme court defined willfulness as 
 [c]onduct of the parent which evinces a settled purpose to forego parental 
 duties . . . because it manifests a conscious indifference to the rights of 
 the child to receive support and consortium from the parent. Id. at 
 53, 413 S.E.2d at 839.  Generally, the family court is given wide discretion 
 in making this determination. However, the element of willfulness must be established 
 by clear and convincing evidence.  South Carolina Dept of Soc. Servs. v. 
 Wilson, 344 S.C. 332, 336, 543 S.E.2d 580, 582 (Ct. App. 2001).
Incarceration alone is an insufficient basis for termination 
of parental rights.  South Carolina Dept. of Soc. Servs. v. Ledford, 357 
S.C. 371, 376, 593 S.E.2d 175, 177 (Ct. App. 2004).  However, in Hamby v. Hamby, 
264 S.C. 614, 216 S.E.2d 536 (1975), our supreme court found that voluntary pursuit 
of lawlessness which results in imprisonment and inability to perform parental 
duties may evince willfulness.  The court also considered the parent-child relationship and lack of contact not only during 
 the fathers incarceration, but also during the period before his incarceration 
 and during the fathers short intervening periods of freedom.  Id. at 
 618, 216 S.E.2d at 538.
Father argues his failure to support Baby Girl Roe was not willful 
because he was incarcerated and prison policy prevented him from earning income.  
He supports his position by citing Wilson, which held an incarcerated father 
did not willfully fail to support his children simply because he was incarcerated 
where the father did not otherwise fail in his parental duties to support the 
children or provide them with a stable home prior to his incarceration. Wilson 
at 338, 543 S.E.2d at 583.
The instant case is clearly distinguishable 
from Wilson.  In this case, Father failed to support Baby Girl Roe during 
the approximate three-month period after her birth prior to his incarceration.  
Although employed as a truck driver, Fathers sole support of Baby Girl Roe since 
her birth arose as a result of DSS garnishing $250 from his tax refund.  By his 
own admission, Father knew a violation of his probation would cause him to return 
to jail and he would be unable to visit or support his child.  Yet, Father chose 
to violate his probation. 
We find Fathers voluntary pursuit of lawlessness 
 and failure to support Baby Girl Roe showed a willful intent to forego support 
 of her that falls within the meaning of the statute.  
B.  Diagnosable Condition 
Father argues the family court lacked clear and 
 convincing evidence to terminate his parental rights on the ground he had a 
 diagnosable condition.  We disagree.   
Pursuant to section 20-7-1572(6), the family court may terminate 
 parental rights upon showing:

The parent has a diagnosable condition unlikely to change 
 within a reasonable time including, but not limited to, alcohol or drug addiction, 
 mental deficiency, mental illness, or extreme physical incapacity, and the condition 
 makes the parent unlikely to provide minimally acceptable care of the child. 
 It is presumed that the parents condition is unlikely to change within a reasonable 
 time upon proof that the parent has been required by the department or the family 
 court to participate in a treatment program for alcohol or drug addiction, and 
 the parent has failed two or more times to complete the program successfully 
 or has refused at two or more separate meetings with the department to participate 
 in a treatment program.

S.C. Code Ann. § 20-7-1572 (Supp. 2003)
Father testified he used crack cocaine prior to 
 the childs birth and during the time after her birth when he was not incarcerated.  
 Mother testified she used crack with Father during her pregnancy and after the 
 childs birth.  Furthermore, Father consistently failed to complete his treatment 
 plan although ordered to do so, despite the fact that drug programs were available 
 to him while incarcerated.  Moreover, the record indicates Father had completed 
 a drug rehabilitation program prior to the childs birth but had relapsed.  
 In Joiner ex rel. Rivas v. Rivas, 342 S.C. 102, 106, 536 S.E.2d 372, 
 374 (2000), our supreme court affirmed the family courts ruling that a parents 
 failure to respond to previous drug rehabilitative efforts meant that her diagnosable 
 condition was unlikely to change within a reasonable time.  Fathers admitted 
 drug use, his past failure to become drug free, and his failure to attend a 
 drug rehabilitation program despite a court order is clear and convincing evidence 
 that Father had a diagnosable condition, unlikely to change in a reasonable 
 time, that made him unable to provide minimally acceptable care for the child.  

C.  Best Interests
After finding one of the grounds for termination exists, section 
 20-7-1572 requires a determination that the termination is in the best interest 
 of the child.  In a termination of parental rights case, the best interests 
 of the child is the paramount consideration.  South Carolina Dept of Soc. 
 Servs. v. Parker, 336 S.C. 248, 258, 519 S.E.2d 351, 356 (Ct. App. 1999).  
 The interests of the child shall prevail if the childs interest and the parental 
 interest conflicts. S.C. Code Ann. § 20-7-1578 (Supp.  2003).  The stated purpose 
 of the TPR statute is as follows:

[T]o establish procedures for the reasonable and compassionate 
 termination of parental rights where children are abused, neglected, or abandoned 
 in order to protect the health and welfare of these children and make them eligible 
 for adoption by persons who will provide a suitable home environment and the 
 love and care necessary for a happy, healthful, and productive life.   

S.C. Code Ann. § 20-7-1560 (Supp. 2003).
Additionally, as we reiterated in Parker, the Supreme Court 
 noted: [p]arental rights do not spring full-blown from the biological connection 
 between parent and child.  They require relationships more enduring.  Parker, 
 336 S.C. at 259, 519 S.E.2d at 356 (quoting Caban v. Mohammed, 441 U.S. 
 380 (1979)).  
An enduring relationship does not exist between Father and Baby Girl 
 Roe.  Father made no effort to support his child, and he has not seen her since 
 shortly after her birth.  Father has a history of drug use, criminal behavior, 
 and incarceration. [2]   Baby Girl Roes adoptive parents have a home, 
 employment, and no criminal record.  Baby Girl Roe has bonded with her adoptive 
 parents and they are the only parents she has ever known.  Both the Guardian 
 ad Litem and DSS caseworker testified termination of parental rights was in 
 the childs best interests.  Therefore, we find the termination of parental 
 rights to be in Baby Girl Roes best interests.
D.  Visitation
Father also argues the family court erred in finding he willfully 
 failed to visit his child because DSS prevented him from visiting.  We agree. 

Section 20-7-1572(3) states:

The child has lived outside the home of either parent for 
 a period of six months, and during that time the parent has willfully failed 
 to visit the child.  The court may attach little or no weight to incidental 
 visitations, but it must be shown that the parent was not prevented from 
 visiting by the party having custody or by court order.  The distance of 
 the childs placement from the parents home must be taken into consideration 
 when determining the ability to visit. 

S.C. Code Ann. § 20-7-1572 (Supp. 2003) (emphasis added).
The family court found Father willfully failed 
 to visit his child under the totality of the circumstances, because his voluntary 
 pursuit of lawless behavior resulted in the incarceration that prevented visitation.  
 Although we agree Fathers pursuit of lawlessness was willful, we must look 
 to the totality of the circumstances pursuant to South Carolina Dept of 
 Soc. Servs. v. Wilson, 344 S.C. 332, 543 S.E.2d 580 (Ct. App. 2001).  The 
 record is somewhat unclear, but clearly indicates Father visited Baby Girl Roe 
 in the hospital after her birth and may have visited her on one other occasion 
 during the three-month period when he was not incarcerated.  DSS prevented Father 
 from visiting with his child based solely on his incarceration.  Despite Fathers 
 requests, DSS would not arrange visitation at the prison.  Section 20-7-1572(3) 
 specifically requires a showing that the parent was not prevented from visiting 
 by the party having custody in order to terminate parental rights.  Because 
 we find DSS prevented visitation between Father and Baby Girl Roe, the statutory 
 requirement of section 20-7-1572(3) has not been met.  
E.  Foster Care Time Period 

Father contends the family court erred in terminating his parental 
 rights on the ground Baby Girl Roe had been in foster care for more than fifteen 
 of the last twenty-two months.  We agree.  
Section 20-7-1572(8) allows for termination of 
 parental rights when, [t]he child has been in foster care under the responsibility 
 of the State for fifteen of the most recent twenty‑two months.  S.C. 
 Code Ann. § 20-7-1572 (Supp. 2003).  Application of this statutory section usually 
 requires no more than a mathematical calculation.  However, in this case the 
 child had not been in foster care for fifteen months when the action was filed.  
 Therefore, we find termination of Fathers parental rights on this ground was 
 in error.  
II. Restraining Order
Father argues the family court erred in 
 granting a restraining order against him.  We disagree.
Parties who seek a restraining order must show 
 facts and circumstances entitling [them] thereto.  Odom v. Odom, 248 
 S.C. 144, 147, 149 S.E.2d 353, 355 (1996).  The family court ordered Father 
 not to contact, telephone, e-mail, harass, stalk, follow, or observe Plaintiffs, 
 the minor child, Defendant Thomas, or DSS employees upon his release from prison, 
 except as may be required in carrying on official business with DSS and the 
 Clerk of Courts office.  Father argues there was insufficient evidence to 
 support the restraining order and that the order was unduly broad because of 
 the inclusion of observe.  However, the record shows Father knew the identity, 
 address, and type of vehicle owned by various parties involved in the case.  
 Father is also a felon and habitual drug user.  Furthermore, any reviewing court 
 will be presumed to read and enforce the restraining order with a degree of 
 common sense.  In light of these facts, we find no error in granting the restraining 
 order.
CONCLUSION
We affirm the termination of parental rights on the grounds Father 
 willfully failed to support his child, had a diagnosable condition that made 
 him unable to provide minimally acceptable care for his child, and the termination 
 was in the best interests of the child.  The family court erred in finding Father 
 willfully failed to visit his child and by finding the child had been in foster 
 care for fifteen of the most recent twenty-two months.  Sufficient facts exist 
 to support the restraining order.  Section 20-7-1572 only requires a single 
 ground to terminate a parents rights. 
AFFIRMED.
ANDERSON, STILWELL, and SHORT, JJ., concur.

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.

 
 [2] Father is currently under indictment for murder.