620 S.E.2d 93

**Thomas Henry STINECIPHER and Hipolita Viego Stinecipher, Appellants,**

**v.**

**Thomas Ray BALLINGTON and Christopher Austin Ballington, a minor under the age of ten (10) years, Respondents.**

**No. 4024.**

Court of Appeals of South Carolina.

Heard June 15, 2005.

Decided Sept. 12, 2005.

M. Gwyn DuBose–Schmitt, of Lexington and Thomas M. Neal, of Columbia, for Appellants.

James B. Richardson, Jr., of Columbia, for Respondents.

George W. Branstiter, of Lexington, for Guardian ad Litem.

PER CURIAM.

This is an appeal from a family court order declining to terminate Thomas Ray Ballington's parental rights to his minor son, Christopher Austin Ballington (Austin). Austin's maternal grandparents, the Stineciphers, appeal, arguing the family court erred in failing to find Ballington, who is serving a life sentence for murdering Austin's mother, wilfully failed to support or wilfully failed to visit Austin. The Stineciphers further argue the family court erred in finding termination was not in Austin's best interest. We reverse and remand.

## FACTS

Austin was born to Ballington and his wife, Edna, in 1995 and was three years old when the Ballingtons separated in June of 1998. After the separation, Edna brought Austin to live with her parents, the Stineciphers. Three months later, Ballington murdered Edna.[1]

After Ballington was arrested for the murder, the Stineciphers took physical custody of Austin and were granted temporary legal custody by an *ex parte* court order. In October 1998, the trial court issued a temporary order, grant-

---

1. This court affirmed Ballington's conviction for murder in *State v. Ballington*, 346 S.C. 262, 551 S.E.2d 280 (Ct.App.2001). According to the facts set forth in that opinion, which was part of the family court's record, Ballington gave a statement to police confessing to murdering Edna after she told him she was planning to seek full custody of Austin. *Id.* at 266–67, 551 S.E.2d at 282–83.

ing the Stineciphers custody and prohibiting any visitation between Austin and Ballington's extended family.

Three months after Edna's murder, Ballington wrote his sister from jail and asked her to purchase several Christmas gifts for Austin. According to Mr. Stinecipher, Ballington's brother insisted on personally delivering the gifts to Austin. Such a delivery would have contravened the temporary order, which restrained visitation between Austin and Ballington's extended family, and Mr. Stinecipher refused to accept such a delivery. Ballington's brother testified that Mr. Stinecipher emphatically refused to receive any gifts from Ballington.

In June of 1999, Ballington petitioned the family court for visitation of Austin. The family court issued an order appointing a guardian *ad litem*. No further hearing on the matter was ever requested. However, throughout his incarceration, Ballington wrote letters to Austin. Initially, he sent Austin's letters to the Stineciphers, but when he found out they did not accept delivery of the Christmas presents, Ballington began sending the letters to his sister. Ballington also wrote separately to his sister, repeatedly asking about establishing visitation with Austin.

At the termination of parental rights ("TPR") hearing, Mr. Stinecipher testified that in the three-and-a-half years he and his wife had custody of Austin, Ballington never sent any money for Austin's support. In fact, although Edna's estate was worth $500,000, those funds were not available for Austin's benefit because Ballington refused to forfeit his interest in Edna's property and life insurance proceeds, and therefore, Edna's estate had not yet closed.[2] Ballington admitted he had never sent money to the Stineciphers, but testified that he believed Austin's support was being paid through rents collected from three properties he and Edna owned jointly. Later in his testimony, however, Ballington admitted that Mr. Stinecipher was "not supposed to" use money from the three rental houses to support Austin.

The family court refused to terminate Ballington's parental rights, finding no ground for termination was proved by clear

---

**2.** Shortly before the TPR hearing, Ballington had finally forfeited his interest in the estate after refusing to do so for three-and-a-half years.

and convincing evidence.[3] The court further ruled that there was "no way" to find termination was in Austin's best interest because no expert testimony was offered. Because it refused to terminate Ballington's parental rights, the family court dismissed the Stinec

iphers' petition to adopt Austin. This appeal followed.

## STANDARD OF REVIEW

 "[I]n a TPR case, the appellate court has jurisdiction to examine the entire record to determine facts in accordance with its own view of the evidence." *Doe v. Baby Boy Roe*, 353 S.C. 576, 579–80, 578 S.E.2d 733, 735 (Ct.App.2003) (citing *Richland County Dep't of Soc. Servs. v. Earles*, 330 S.C. 24, 32, 496 S.E.2d 864, 866 (1998)). In this examination and in our determination, the best interest of the child is our paramount consideration. *Id.* at 579, 578 S.E.2d at 735. In addition, the grounds for TPR must be proved by clear and convincing evidence. *Id.* Thus, this court may review the record and make its own findings as to whether clear and convincing evidence supports the TPR. *Id.* (citing *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct.App. 1999)). However, this broad scope of review does not require us to disregard the findings of the trial court or to ignore the fact that the court was in a better position to assess the credibility of witnesses. *Id.* at 580, 578 S.E.2d at 735 (citing *Dorchester County Dep't of Soc. Servs. v. Miller*, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct.App.1996)).

## LAW/ANALYSIS

The Stineciphers argue the family court erred by not finding Ballington wilfully failed to support Austin. We agree.

---

**3.** When the Stineciphers initially filed suit against Ballington in October 2000, South Carolina's TPR statute did not yet have a ground related to the murder of the child's other parent. On March 5, 2004, the TPR statute was amended to add the following ground for termination: "A parent of the child pleads guilty or nolo contendere to or is convicted of the murder of the child's other parent." S.C.Code Ann. 20–7–1572(10) (Supp.2004). However, the Stineciphers do not argue we should apply this statute retroactively, but rather ask us to reverse based only on Ballington's willful failure to support and willful failure to visit.

Parental rights may be terminated if the child has lived outside the home of either parent for six months and, during that time, "the parent has wilfully failed to support the child." S.C.Code Ann. § 20–7–1572(4) (Supp.2004). According to section 20–7–1572(4):

Failure to support means that the parent has failed to make a material contribution to the child's care. A material contribution consists of either financial contributions according to the parent's means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means. The court may consider all relevant circumstances in determining whether or not the parent has wilfully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support.

Whether the failure to support is wilful is a question of intent to be determined by the facts and circumstances of each case. *S.C. Dep't of Soc. Servs. v. Wilson,* 344 S.C. 332, 335, 543 S.E.2d 580, 582 (Ct.App.2001). Wilfulness is conduct that " 'evinces a settled purpose to forego parental duties ... because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent.' " *Id.* (quoting *S.C. Dep't of Soc. Servs. v. Broome,* 307 S.C. 48, 53, 413 S.E.2d 835, 839 (1992)).

In declining to find Ballington had wilfully failed to support Austin, the family court noted that Mr. Stinecipher controlled money from rents in which Ballington had an interest, the Stineciphers never sought support, and Austin had an estate valued at $500,000. However, none of these reasons convince us that Ballington provided for Austin, nor does Ballington's testimony indicate his failure to support Austin was unwilful.

It is true, as the family court noted, that Mr. Stinecipher had "control" over the rents collected from the houses Ballington and Edna jointly owned. However, this control stemmed from his being the personal representative of Edna's estate and only allowed him to collect the rents and to make repairs to the properties as necessary. Although Ballington testified at one point that he believed he was supporting Austin through the excess rents, he later admitted that Mr. Stinecipher was

obligated to account for all the money collected on the houses and could only use the rent money collected to maintain the properties. Thus, Ballington's assertion that he assumed the rent money was being used to support Austin is not credible.

As for the $500,000 in Edna's estate, that money was not available for Austin's benefit because the estate had not yet closed, and it was Ballington's refusal to forfeit his interest in the estate that caused this delay.[4] Moreover, even if the $500,000 were available, that would not obviate Ballington's responsibility to make a material contribution to Austin's care according to Ballington's means. *See* S.C.Code Ann. § 20–7–1572(4) (requiring parents to make a contribution to their child's care based on the parents' means, not the child's need). Although Ballington maintained he could not support Austin because he generated no income while incarcerated, the record reflects Ballington had significant amounts of money at his disposal. While incarcerated, Ballington inherited $30,000, all of which he used to pay his criminal defense attorney. Even after spending this money on himself, he still had $4,400 in his checking account at the time of the TPR hearing, but admitted he never directed his brother, who had power of attorney, to write a check for Austin's support.[5] *Cf. S.C. Dep't of Soc. Servs. v. Wilson,* 344 S.C. 332, 543 S.E.2d 580 (Ct.App.2001) (finding family court should not have terminated parental rights of incarcerated father on ground of his wilful failure to support where prison policies prevented him from earning any income and he had no other source of income); *see also S.C. Dep't of Soc. Servs. v. Phillips,* 301 S.C. 308, 310, 391 S.E.2d 584, 585 (Ct.App.1990) (explaining that incarceration of the

---

4. Ballington did not forfeit his interest in Edna's property and insurance until three-and-a-half years after he murdered her.

5. During oral argument, Ballington's attorney argued that sending a check to the Stineciphers would have been futile because they would not have accepted it. Such a conclusion is purely speculation, especially when letters Ballington sent to Austin via the Stineciphers were never returned to him. Although Mr. Stinecipher admitted he refused to allow Ballington's brother to personally deliver Christmas presents to Austin three months after Edna's murder, this alone does not dictate how Mr. Stinecipher would have reacted to receiving a check in the mail. Furthermore, when Ballington testified at the hearing, he never claimed that his failure to send a check was because he believed such an act would be futile.

parent does not relieve a parent from the duty to support the child).

■ Finally, although the family court noted that the Stineciphers never sought support, this factor is not determinative. Prior to 1992, parental rights could not be terminated on the ground of failure to support unless the child's custodian requested support from the parent. However, the legislature amended section 20–7–1572(4) in 1992 so that a custodian's request was not required, though the lack of a request could be considered along with all other relevant circumstances. S.C.Code Ann. § 20–7–1572(4) ("The court may consider all relevant circumstances in determining whether or not the parent has wilfully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support."); *see also S.C. Dep't of Soc. Servs. v. Cummings,* 345 S.C. 288, 296, 547 S.E.2d 506, 510 (Ct.App. 2001) (noting that nothing requires a parent be notified of his duty to support his child before failure to discharge this duty may serve as grounds for termination of parental rights). Thus, Ballington was not relieved of his duty to support Austin merely because the Stineciphers never requested support.

We therefore find clear and convincing evidence that Ballington not only failed to send any money to aid in Austin's support, but that he actually prevented Austin from deriving the benefits of Edna's estate. Were it only a failure to send money to Austin, we might be inclined to defer to the trial court's determination that such a failure was not wilful; however, considering Ballington's actions which actually impeded Austin from receiving money from his mother's estate, we are compelled to find Ballington's failure to provide for Austin was wilful. Finding the Stineciphers proved a ground for termination of parental rights by clear and convincing evidence, we move on to determine whether termination would be in Austin's best interest.[6]

■ The Stineciphers assert that the trial court erred in failing to find TPR and adoption were in Austin's best interest

---

**6.** Because we find Ballington wilfully failed to support Austin, we need not address whether the Stineciphers proved any other ground for termination.

and in concluding that expert testimony was necessary to make such a finding. We agree.

 If the trial court finds a proven statutory ground for TPR, it must also find the best interest of the child would be served by TPR.[7] *See Doe v. Baby Boy Roe,* 353 S.C. 576, 581, 578 S.E.2d 733, 736 (Ct.App.2003). If the child's interests and the parent's interests conflict, the interests of the child shall prevail. S.C.Code Ann. 20–7–1578 (Supp.2004); *see also S.C. Dep't of Soc. Servs. v. Vanderhorst,* 287 S.C. 554, 561, 340 S.E.2d 149, 153 (1986). While the appointment of a guardian *ad litem* is required in TPR cases, there is no such requirement for expert testimony. S.C.Code Ann. 20–7–1570(B) (Supp.2004). Family court judges often determine whether TPR is in a child's best interest without the aid of an expert.

We find persuasive evidence in the record indicating that termination of Ballington's rights to Austin would be in Austin's best interest. Austin was only three-and-a-half years old when Ballington was incarcerated for the murder of Austin's mother, and Austin has since had no contact with Ballington. Because Ballington is serving a sentence of life without parole,[8] there is no possibility that Austin would ever be able to have a normal father-son relationship with Ballington. Moreover, as numerous witnesses testified, including the guardian, Austin has bonded with the Stineciphers and has thrived in their care.

## CONCLUSION

Based on Ballington's wilful failure to support and because it is in Austin's best interest to do so, the parental rights of Ballington in and to Austin should be terminated. According-

---

7. By contrast, a family court need not reach best interest when no ground for termination exists. Despite this, the family court in this case ruled on best interest even though it found no ground for TPR was proved.

8. Though Ballington testified that he believed he would one day be freed from prison, the Lexington County Solicitor, Donnie Myers, testified that Ballington was serving a sentence of life without the possibility of parole.

102

ly, the order of the trial court is reversed and the petition for adoption is remanded.

**REVERSED and REMANDED.**

HEARN, C.J., and BEATTY and SHORT, JJ., concur.