THIS OPINION
 HAS NO PRECEDENTIAL VALUE.   IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT
 IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Erika W. and
 Rodney W., Appellants,
 v.
 Vanessa Lee
 W., Dusty Ray S., and Emily Faith S., a minor under the age of fourteen (14)
 years, Respondents. 
 
 
 

Appeal From Cherokee County
Gerald C. Smoak, Jr., Family Court Judge
Unpublished Opinion No. 2007-UP-459
Submitted October 1, 2007  Filed October
 11, 2007    
REVERSED AND REMANDED

 
 
 
 Usha Jeffries Bridges and William G.
 Rhoden, both of Gaffney, for Appellants.
 Dusty
 Ray S., of Mooresboro; Vanessa Lee W., of Gaffney, for Respondents.
 
 
 

PER CURIAM:   Erika W. and Rodney W. (Grandparents) brought this
 action seeking to terminate the parental rights of Vanessa Lee W. (Mother) and
 Dusty Ray S. (Father).  Grandparents sought to adopt their granddaughter after
 the termination.  The family court found Mother consented to their termination
 and, in its amended order, terminated her parental rights.  However, the court
 denied the request to terminate Fathers parental rights based on either a
 failure to visit or a failure to support the child.[1]  
FACTS
The child was born
 in August 2000, and Mother and Father were living together at the time.  In
 2003, Grandparents took custody of the child.  Rodney W. (Grandfather)
 testified he visited the childs home in November 2003 and the child opened the
 door.  He was unable to wake the parents, so he took custody of the child.  The
 parents finally called later that afternoon.  Several days later, Grandfather
 called the home and Mother hung up on him.  He again went to the home only to
 find it had been ransacked.  In the process of helping clean the house,
 Grandfather found numerous items of drug paraphernalia.  
A family court
 order filed December 3, 2004, granted custody to Grandparents and required
 Mother and Father to pay child support.  Specifically, Father was ordered to
 pay $50 per week in child support through the court.  The order allowed
 supervised visitation for the parents.  Fathers visitation was supervised by
 his parents.  
In April 2005,
 Father went to jail for violating probation for his unauthorized use of a motor
 vehicle.  At the same time, he was on probation in North Carolina for felony
 fleeing, alluding arrest in a motor vehicle, possession of a schedule two
 narcotic, driving while license is revoked, speeding, and public passing.  Upon
 his release in South Carolina in October 2005, he had to spend a month in jail
 in North Carolina.  While in jail, he sent at least one letter to his daughter,
 but he did not pay any child support.  He called to speak to his daughter
 either while in jail or once he got out.
After he was
 released, Father failed to make most of his required child support payments;
 however, he had difficulty obtaining a job upon his release.  In addition, he
 had little to no visitation with his daughter after his release.  The parties
 dispute the reason for the lack of visitation.  
In January 2006,
 Grandparents brought this action to terminate the parental rights of Mother and
 Father.  The action was brought against Father on the grounds that he willfully
 failed to support and willfully failed to visit his daughter for a period of at
 least six months.  Grandparents sought to adopt the child.  Mother signed a
 relinquishment of rights and consented to the adoption prior to trial.  Father, pro se, contested the TPR action and the adoption.
The family court
 issued an order finding Fathers failure to support and failure to visit was
 not willful.  The court found he was incarcerated and had difficulty obtaining
 work.  The family court noted he paid some child support and had regular
 visitation prior to going to jail.  The court denied the termination of
 Mothers parental rights.  The court did not address whether termination would
 be in the best interest of the child.
Grandparents filed
 a motion to reconsider, arguing they provided sufficient proof of Fathers
 failure to support and visit.  They maintained Mother voluntarily relinquished
 her rights and the court should have terminated her rights.  The court agreed
 Mothers rights should have been terminated.  However, the court found
 Grandparents failed to carry their burden of proof to show Fathers failure to
 support and visit was willful.  The court, therefore, denied the termination of
 Fathers parental rights.  Again, the court did not address the best interest
 of the child.  
STANDARD OF REVIEW
Section
 20-7-1578 of the South Carolina Code (Supp. 2005) mandates that the TPR
 statutes must be liberally construed in order to ensure prompt judicial
 procedures for freeing minor children from the custody and control of their
 parents by terminating the parent-child relationship.  See also Joiner
 v. Rivas, 342 S.C. 102, 536 S.E.2d 372 (2000) (overruling prior cases
 calling for strict construction of the TPR statutes).  The interests of the
 child shall prevail if the childs interest and the parental rights conflict. 
 S.C. Code Ann.  § 20-7-1578.  Grounds for termination of parental rights must
 be proven by clear and convincing evidence.  South Carolina Dept of
 Soc. Servs. v. Headden, 354 S.C. 602, 608-09, 582 S.E.2d 419, 423 (2003)
 (citing Santosky v. Kramer, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d
 599 (1982)).
In
 appeals from the family court, this court may find facts in accordance with its
 own view of the preponderance of the evidence.  Rutherford v.
 Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992); Owens v.
 Owens, 320 S.C. 543, 546, 466 S.E.2d 373, 375 (Ct. App. 1996).  However,
 this broad scope of review does not require us to disregard the family courts
 findings.  Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616,
 617 (1981).  Nor must we ignore the fact that the trial judge, who saw and
 heard witnesses, was in a better position to evaluate their credibility and
 assign comparative weight to their testimony.  Cherry v. Thomasson, 276
 S.C. 524, 525, 280 S.E.2d 541, 541 (1981); Miles v. Miles, 355 S.C. 511,
 516, 586 S.E.2d 136, 139 (Ct. App.  2003).
LAW/ANALYSIS
Grandparents
 contend the family court erred in finding Fathers failure to visit and failure
 to support his child for six months was not willful due at least in part to his
 incarceration.  They maintain the court used the wrong standard in considering
 Fathers incarceration as a mitigating factor.  
The
 family court may order the termination of parental rights upon a finding of one
 or more of eleven statutory grounds and a finding that termination is in the
 best interest of the child.  The relevant grounds in this case are:

 (3)  The child has lived outside the home of either
 parent for a period of six months, and during that time the parent has wilfully
 failed to visit the child.  The court may attach little or no weight to
 incidental visitations, but it must be shown that the parent was not prevented
 from visiting by the party having custody or by court order.  The distance of
 the childs placement from the parents home must be taken into consideration
 when determining the ability to visit;
 (4)  The child has lived outside the home of either
 parent for a period of six months, and during that time the parent has wilfully
 failed to support the child.  Failure to support means that the parent has
 failed to make a material contribution to the childs care.  A material
 contribution consists of either financial contribution according to the
 parents means or contributions of food, clothing, shelter, or other
 necessities for the care of the child according to the parents means.  The
 court may consider all relevant circumstances in determining whether or not the
 parent has willfully failed to support the child, including requests for support
 by the custodian and the ability of the parent to provide support .

S.C.
 Code Ann. § 20-7-1572 (Supp. 2005).  

Willful
 conduct is conduct that evinces a settled purpose to forego parental duties 
 because it manifests a conscious indifference to the rights of the child to
 receive support and consortium from the parent.  S.C. Dept of Soc. Servs.
 v. Broome, 307 S.C. 48, 53, 413 S.E.2d 835, 838 (1992).  Whether a parent
 has willfully failed to visit or support his or her child is a question of
 intent to be determined from the facts and circumstances of each individual
 case.  S.C. Dept of Soc. Servs. v. Headden, 354 S.C. 602, 610, 582
 S.E.2d 419, 423 (2003); Stinecipher v. Ballington, 366 S.C. 92, 98, 620
 S.E.2d 93, 96 (Ct. App. 2005).  The family court has wide discretion to make
 this determination, but the element of willfulness must be established by clear
 and convincing evidence.  Broome, 307 S.C. at 52, 413 S.E.2d at 838. 
 The court may consider all relevant circumstances in determining whether or
 not the parent has willfully failed to support the child, including  the
 ability of the parent to provide support.  S.C. Code Ann.  § 20-7-1572.  
 

Incarceration
 alone is insufficient to justify TPR.  See S.C. Dept of Soc. Servs.
 v. Wilson, 344 S.C. 332, 337, 543 S.E.2d 580, 583 (Ct. App. 2001).  In Wilson, the father was incarcerated after the birth of his three children.  We
 reversed the family courts grant of TPR, holding that [t]erminating the
 parental rights of an incarcerated parent requires consideration of all of the
 surrounding facts and circumstances in the determination of wilfullness.  Id. at 340, 543 S.E.2d at 584.  We noted the record was replete with evidence of not
 only the fathers repeated requests to the Department to visit his children,
 but the Departments active role in thwarting the fathers attempts to visit
 his children.  Id. at 338, 543 S.E.2d at 583.  

In
 the instant case, everyone acknowledges Father regularly maintained his
 visitation prior to his incarceration, seeing his daughter at least once a
 month until his incarceration.  Upon incarceration, his efforts to maintain
 contact greatly diminished.  He only sent a couple letters and made a couple
 phone calls.  He offered no explanation for the drop off in contact.  Father
 asserted at the hearing that, after he was released from incarceration, he and
 his grandparents attempted to obtain visitation from Grandparents. Father
 claimed he was told that Grandparents had to discuss the possibility of
 visitation with their attorneys.  As a result, there was no visitation by
 Father after he was released.  The evidence is not nearly as strong as that
 provided in the Wilson case.  However, the family court concluded
 Grandparents had not met their burden to prove by clear and convincing evidence
 that the failure to visit was willful.  Accordingly, the courts determination
 should be given deference.  

As
 to the failure to support, there is significantly less evidence in Fathers
 favor.  He made almost no payments to Grandparents prior to the December 3
 order.  After the order, he made no payments through the court as required
 until December 2005.  In total, he only made $110 in payments, and, at the time
 of the hearing, was in arrears $3,932.50.  Even if the period of his incarceration
 and the time he was unemployed were considered excused, he never made payments
 through the court as he was supposed to prior to his incarceration.  In
 addition, he only made two total payments between his release in November 2005
 and the hearing in May 2006.

Father
 testified he made some payments to Grandparents after they first obtained
 custody.  He testified that he had a hard time finding employment after he was
 released from incarceration.  Additionally, he admitted he did not pay like I
 was supposed to.  Finally, he testified that he has withheld support due to
 his inability to obtain visitation with his child since his incarceration.

In
 looking at the family court history of payments, he has only made two payments
 through the court between December 2004 and May 2006.  Even if the
 incarceration and the subsequent unemployment were omitted, he still went
 significant periods of time without making payments of support as ordered by
 the court.  The only mitigating factor is the failure of the Grandparents to
 show how much Father could have paid.  Father admitted he was employed prior to
 his incarceration and did not make payments as he should.  In addition, he
 admitted that, at the time of the hearing, he was making about $600 per month
 and failed to provide support. Accordingly, this court finds by clear and
 convincing evidence that Father failed to support his child.   

When
 adjudicating a TPR case, the best interests of the child are paramount.  S.C.
 Dept of Soc. Servs. v. Cummings, 345 S.C. 288, 298, 547 S.E.2d 506, 511 (Ct. App. 2001).  Once a statutory ground has been proven, section 20-7-1572 of the South
 Carolina Code (Supp. 2005) requires that the best interest of the child must be
 served by termination of parental rights.  Our supreme court has held that the
 termination of parental rights statute should be liberally construed consistent
 with the purpose to facilitate prompt adoption and the best interest of the
 child.  Joiner v. Rivas, 342 S.C. 102, 536 S.E.2d 372 (2000).

Here,
 we conclude that the issue of the best interest of the child should be remanded
 to the family court for a full evidentiary hearing on this issue.  
CONCLUSION
For
 the foregoing reasons, we find Grandparents met their burden to show Father
 willfully failed to support his child.  We find the issue of the best interest
 of the child should be remanded to the family court for a full evidentiary
 hearing on this issue.  Accordingly, the decision of the family court is

REVERSED  AND
 REMANDED.
HEARN, C.J., AND
 ANDERSON, and THOMAS, JJ., concur.

[1] We decide this case without oral argument
 pursuant to Rule 215, SCACR.