THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Gerald Ballard and Linda Ballard, Appellants,
 
 
 

v.

 
 
 
 Maria Barbee Ballard and Jerald Wayne Ballard, Jr., Respondents.
 
 
 

Appeal From Greenville County
Alvin D. Johnson, Family Court Judge

Unpublished Opinion No. 2006-UP-078
Submitted February 1, 2006  Filed February 10, 2006

AFFIRMED

 
 
 
 Andrew G. Goodson, of Fountain Inn, for Appellants.
 W. Daniel Yarborough, Jr., of Greenville, for Respondent Maria Barbee Ballard.
 Jerald Wayne Ballard, Jr., of Pelzer, Pro Se.
 Vanessa L. Hartman, of Greenville, Guardian ad Litem.
 
 
 

PER CURIAM:  Gerald Ballard and Linda Ballard (Grandparents) appeal from the family courts order refusing to terminate the parental rights of their son, Jerald Wayne Ballard, Jr. (Father) and Maria Barbee Ballard (Mother) and in altering the previously ordered visitation schedule.  We affirm.
Facts
Mother and Father were married in October of 1997.  On June 17, 1998, Christopher Wayne Ballard, was born to Mother and Father. Christian Marie Pearl Ballard was born on November 21, 2000.  Father began using drugs early in the marriage.  Eventually, Mother began using drugs.  Mother and Father separated and reconciled numerous times.  In July of 2001, Mother asked Grandparents to watch over the kids for [her] to go to the hospital and get some help to get clean.
There were approximately fifteen months, June 2002 to September 2003, when Mother had no contact with the children.  According to Mother, when she was released from the hospital, Grandparents prevented her from seeing the children.  Mother attempted two interventions by the court to enforce her visitation rights.  Neither of these attempts were successful.  Mother admitted this period of time where she was out of contact with her children occurred during a time in which she was actively addicted to drugs.  It was difficult for Mother to maintain employment and an appropriate lifestyle.  Mother claims she tried to speak to her children during this period of time.  The evidence is contradictory as to whether the children were being prevented from speaking to Mother.
On March 28, 2002, the family court granted custody of Christopher and Christian to Grandparents, with supervised visitation to Mother and Father from 1:00 p.m. until 4:00 p.m. every Sunday.  The judge ordered that visitation was to be supervised by Margie Ballard, the paternal great-grandmother of the children.  The judge ordered Mother and Father to each pay $56.00 per week as child support.  Grandparents had custody of the minor children on a de facto basis since July 24, 2001.
Mother and Father paid no child support from January of 2002 until October of 2002.  According to the testimony, Father was not paying child support because he had already given up his parental rights in his mind by executing papers provided by Grandparents to this effect.  Mother was incarcerated at least two times for failing to pay child support.
On December 31, 2002, the Grandparents brought this action for termination of parental rights of Mother and Father and for the adoption of Christopher and Christian.
Neither Mother nor Father retained legal counsel or filed any responsive pleadings prior to September 24, 2003.  Further, Father executed a document consenting to the termination of his parental rights and to adoption by Grandparents.  This matter was scheduled for a hearing on September 24.  By order dated October 1, 2003, the court continued this matter because Mother had hired an attorney and informed the court she opposed termination of her parental rights.  Mothers attorney filed an answer and counterclaim seeking increased visitation with the minor children.
At the final hearing, the family court judge heard numerous witnesses for each party, including testimony by the guardian ad litem and submission of a guardian ad litem report.  The court received documentary evidence.  Father was not present at the hearing and did not participate in any way.  The family court denied termination of parental rights of Mother and Father and altered the visitation schedule established by the March 28, 2002 order.  Grandparents filed a motion for reconsideration, which the court denied. 
Standard of Review
In a termination of parental rights (TPR) case, the paramount consideration is the best interests of the children.  See South Carolina Dept of Soc. Servs. v. Sims, 359 S.C. 601, 598 S.E.2d 303 (Ct. App. 2004).  Grounds for TPR must be proved by clear and convincing evidence.  Hooper v. Rockwell, 334 S.C. 281, 513 S.E.2d 358 (1999); see also Santosky v. Kramer, 455 U.S. 745, 747-48 (1982) (Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.).
In a TPR case, the appellate court may review the record and make its own findings of whether clear and convincing evidence supports termination.  South Carolina Dept of Soc. Servs. v. Parker, 336 S.C. 248, 519 S.E.2d 351 (Ct. App. 1999).  However, our broad scope of review does not require us to disregard the findings below or ignore the fact that the trial judge was in a better position to assess the credibility of the witnesses.  Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 477 S.E.2d 476 (Ct. App. 1996).
Discussion
I.  Termination of Parental Rights
A.  Father
Grandparents argue the family court erred by failing to terminate Fathers parental rights where Father consented to the termination and adoption and had no contact with the minor children since birth.  We find this issue is not preserved for review.
 In declining to terminate Fathers rights, the family court held: I do find that the [Grandparents] have established their right to terminate the parental rights of [Father] and the minor children, but for the reasons expressed herein, the Court determines that it is not appropriate to terminate the natural fathers parental rights, inasmuch as the parental rights of the natural mother have not been terminated.  In their Rule 59(e) motion, Grandparents fail to raise any issues regarding the family courts ruling as to Father.  The issue regarding Fathers consent to the termination is therefore not preserved for appeal.  See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (requiring appellants to make a rule 59(e) motion requesting the trial court to rule upon an issue the trial court neglected in order to preserve the argument for appellate review).  Furthermore, in their brief to our court, Grandparents merely make a cursory argument regarding the family courts failure to terminate Fathers parental rights, and they cite to no authority for their position.  Thus, their arguments as to Father are deemed abandoned.  See State v. Addison, 338 S.C. 277, 285, 525 S.E.2d 901, 906 (Ct. App. 1999) (Conclusory arguments constitute an abandonment of the issue on appeal.).  
B.  Mother
Grandparents argue the family court erred in failing to terminate Mothers parental rights.  Grandparents claim they proved Mother willfully failed to visit or support the minor children for periods in excess of six months.
Section 20-7-1572(3) and (4) of the South Carolina Code provides:
The family court may order the termination of parental rights upon a finding of one or more of the following grounds and a finding that termination is in the best interest of the child:

 . . . .
 (3) The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to visit the child.  The court may attach little or no weight to incidental visitations, but it must be shown that the parent was not prevented from visiting by the party having custody or by court order.  The distance of the childs placement from the parents home must be taken into consideration when determining the ability to visit;
 (4) The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child.  Failure to support means that the parent has failed to make a material contribution to the childs care.  A material contribution consists of either financial contributions according to the parents means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parents means.  The court may consider all relevant circumstances in determining whether or not the parent has wilfully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support.

S.C. Code Ann. § 20-7-1572(3) & (4) (Supp. 2005).  The court must find willfulness both in the failure to visit and the failure to support.
Whether a parents failure to visit or support a child is willful within the meaning of § 20-7-1572 is a question of intent to be determined from all the facts and circumstances in each case.  South Carolina Dept of Soc. Servs. v. Broome, 307 S.C. 48, 413 S.E.2d 835 (1992).  The trial judge is given wide discretion in making this determination.  Id.  However, the element of wilfulness must be established by clear and convincing evidence.  Richberg v. Dawson, 278 S.C. 356, 296 S.E.2d 338 (1982); South Carolina Dept of Soc. Servs. v. Parker, 336 S.C. 248, 519 S.E.2d 351 (Ct. App. 1999).  A parents conduct which evinces a settled purpose to forego parental duties may fairly be characterized as willful because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent.  Hamby v. Hamby, 264 S.C. 614, 216 S.E.2d 536 (1975).
In the instant case, the judge heard the testimony of Grandparents, the paternal great-grandmother, Mother, and a number of other witnesses.  The great-grandmothers testimony showed that there were a couple of times when Mother tried to visit with the children around July of 2002 but there was some obstacle that prevented the visit, such as when great-grandmothers sister was in the hospital.  According to the great-grandmother and Mother, since September of 2003, Mother has exercised her visitation regularly.
Grandparents admit to having notice of Mothers filing of a pro se motion for violation of visitation in November of 2002, even though they state in their testimony that the period that Mother failed to visit was from June of 2002 to September of 2003.  During this time, Mother telephoned three or four times and left messages on Grandparents voice mail, saying hello, tell the children I love them.
Mother testified that she made child support payments in 2001, 2002, and 2003, as is demonstrated by the payment history submitted into evidence.   She denied willfully failing to pay support.  Over this three year period of time, Mother paid over $6000 in child support, even though during much of this time she was unemployed.  During this time, Grandparents required no support from Father.  There is nothing in the record to indicate Grandparents specifically requested support from either Mother or Father.  Section 20-7-1572(4) specifically states that the court may consider all relevant circumstances in determining whether or not the parent has wilfully failed to support the child, including requests for support by the custodian and the ability of the parent to provide support.  As of the date of the hearing in this case, although she was still in arrears, Mother was making steady routine child support payments.  The payment records indicate Mother has been consistent in making payments once she obtained employment.
The guardian ad litem stated: I think [Mothers] extremely tenacious and shes gone a lot further than a lot of others that Ive seen in the same situation.  The guardian declared: Ive been doing Guardian work for seven years and I think shes probably the most rehabilitat[ed] defendant Ive ever met.  She is completely convincing.  Shes completely honest and forthright.  She doesnt hide anything from me.  The guardian felt Mother had been totally honest with her.
The court held: I find that it is not appropriate to terminate the parental rights of [Mother], in and to her children by the facts presented at this hearing.  I find [Mother] has fully rehabilitated herself as to prior drug problems.  The judge further declared: [Mother] has presented a strong case that she has totally turned her life around and has made excellent progress in her life.  She is now working full-time at Wal-Mart.  She has been drug free for many months.  She is fully participating in an intensive lifestyle changing program at her church, which appears to be very successful.  The judge noted: [T]he guardian ad litem in this case states that she has not seen such a total turn around in a case such as this in her entire seven (7) years of guardian ad litem experience.  The judge stated the payment records indicate that [Mother] has been consistent in making payments once she obtained employment.  The judge found: [O]n these facts, there has been no willful failure to visit by [Mother] nor is there a willful failure to provide support.
The family court judge did not err in finding Grandparents did not prove, by clear and convincing evidence, the willful failure to visit or the willful failure to provide support to the minor children.
II.  Visitation Schedule
Grandparents argue the family court erred in altering the previously ordered visitation schedule.  Grandparents claim the court further erred in failing to alter the visitation schedule to accommodate the activities of the minor children because, on motion to alter or amend, Grandparents showed modification of the visitation schedule by the court interfered with activities of at least one of the minor children.
The court held: I find it appropriate that visitation for [Mother] shall be increased from the present three (3) hours on alternating Sundays to three (3) Saturdays per month from 9:00 a.m. until 5:00 p.m.  Visitation should be accomplished on the 1st, 2nd, and 4th Saturdays of the month.  The [Grandparents] and [Mother] shall exchange the child for visitation purposes at the Hardees Restaurant in Fountain Inn , South Carolina . . . .  It is within the courts discretion to alter the visitation schedule in light of the dramatic change in circumstances.  Mother has a good job at Wal-Mart and has rehabilitated herself in a significant way.
The record does not disclose any conflicting extracurricular activities of the minor children from the expanded visitation ordered by the court.  Therefore, it is appropriate for the court to deny the reconsideration motion of the Grandparents.
Conclusion
Accordingly, the order of the family court is
AFFIRMED.
HEARN, C.J., ANDERSON and KITTREDGE, JJ., concur.