MCDONALD, J.:
Pursuant to an investigation of minor child's (Minor's) allegations of abuse and neglect by her adoptive parents, the South Carolina Department of Social Services (DSS) brought an action against James (Father) and Judy (Mother) Wiseman (collectively, the Wisemans), seeking findings of excessive corporal punishment and abandonment.[1]
*75 Although the family court declined to make a finding of abuse and neglect, it found the Wisemans abandoned Minor when they were unable to accept her into their custody upon her release from the Medical University of South Carolina's Institute of Psychiatry (MUSC-IOP). We reverse the finding of abandonment and remand to the family court.
Facts and Procedural History
On January 29, 2016, Mother took away Minor's easy bake oven and iPad because Minor was falling behind in her schoolwork and being disrespectful.[2] At this point, Minor "got up in [Mother's] face" and began screaming, using profanity, and threatening Mother with her fists. Mother told Minor to go outside and cool down; however, Minor remained very upset.
Shortly thereafter, Father arrived home and attempted to calm Minor. When Father tugged on Minor's shirt and asked her to stand up, Minor tried to hit Father with a brick. In his effort to avoid being struck with the brick, Father grabbed at Minor's hair as he fell backward to the ground. Minor then threatened to hit Father with a metal bar, nearly hit Mother with the metal bar, and ran down the street to a neighbor's house.[3]
Officer Matthew Treitler of the Horry County Police Department responded to the scene. He testified that when he arrived at the neighbor's house, Minor had "no sign of bruising, scrapes, abrasions, nothing along those lines that would be there if [she had been] thrown up against the bricks or a hard surface or something like that." He further explained "there would be some sign of trauma or something, but I did not observe anything while I was there." Due to Minor's behavior, Officer Treitler believed she needed psychiatric treatment.[4] He testified:
By the way she was acting and just the emotional states that she was going between. Between being completely hysterical, upset and crying and not talking and then just being completely straight-faced, I mean, within a couple of seconds of one another. I believe that something was going on.
Officer Treitler filed no charges. Instead, he took Minor back to the Wisemans, who drove her to MUSC-IOP, where she was admitted.
DSS received Minor's allegations on February 1, 2016. Later that day, investigative caseworker Dominique Richard contacted the Wisemans. The following day, Richard visited Minor at MUSC-IOP and met with therapist King, an MUSC social worker, and the Wisemans to discuss placement.
During Minor's stay at MUSC-IOP, the Wisemans regularly communicated with Minor and cooperated with the treatment team's recommendations. Minor was discharged from MUSC-IOP on February 11, 2016. However, because she remained "unstable" at the time of her discharge from the short term facility, Minor's treatment team recommended she be placed in a residential treatment facility (RTF). No bed was available at any of the recommended residential treatment facilities.
Although DSS attempted to have MUSC-IOP security take Minor into emergency protective custody, officers declined to do so, stating Minor was not at risk of harm. While the Wisemans testified DSS requested it be allowed to take Minor into emergency protective custody to get her the help she needed, DSS denies this conversation ever took place. Instead, caseworker Richard testified the Wisemans refused to take Minor back into their home.
On February 12, 2016, DSS filed a complaint seeking to bring Minor into emergency protective custody. The family court granted DSS's request for ex parte relief, and Minor was placed in a therapeutic foster home pending an opening at Palmetto Pee *76 Dee Residential Treatment Facility (Palmetto). Minor was placed at Palmetto on February 29, 2016, where she began receiving intensive trauma therapy and other psychiatric intervention and treatment.[5] The Wisemans regularly visited Minor and remained in communication with her, all while following the recommendations of Minor's treatment team.
Following a three-day trial on the merits, the family court found DSS did not meet its burden of proof as to the allegation of physical abuse but issued a finding of abandonment against the Wisemans.[6] The family court denied the Wisemans' motion to reconsider the final merits order and abandonment finding.
Standard of Review
The appellate court reviews decisions of the family court de novo. See Stoney v. Stoney , 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam) (stating the appropriate standard of de novo review as articulated in Lewis v. Lewis , 392 S.C. 381, 709 S.E.2d 650 (2011) ). "In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. However, this broad scope of review does not require this court to disregard the findings of the family court." Lewis , 392 S.C. at 384, 709 S.E.2d at 651 (quoting Eason v. Eason , 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009) ).
Law and Analysis
The Wisemans argue the family court erred in finding they abandoned Minor because (1) the facts of the case do not support the finding of abandonment; (2) the Wisemans' fear of harm negated the intent necessary to establish abandonment; (3) a finding of abandonment cannot be supported because DSS admittedly could not and would not allow Minor to return to the Wisemans' home during the pendency of the investigation; and (4) the evidence established the Wisemans' actions were dictated by the "force of circumstances and dire necessity." See Hamby v. Hamby , 264 S.C. 614, 617, 216 S.E.2d 536, 538 (1975). We agree.
" 'Abandonment of a child' means a parent or guardian wilfully deserts a child or wilfully surrenders physical possession of a child without making adequate arrangements for the child's needs or the continuing care of the child." S.C. Code Ann. § 63-7-20(1) (Supp. 2018). In Hamby , our supreme court recognized that "the question of abandonment is largely one of intent to be determined in each case from all the facts and circumstances." 264 S.C. at 617, 216 S.E.2d at 538. The court explained "abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." Id. (quoting 2 Am. Jur. 2d Adoption § 32 ). However, abandonment "does not include an act or course of condu[c]t by a parent which is done through force of circumstances or dire necessity." Id. (quoting 2 Am. Jur. 2d Adoption § 33 ).
Here, the evidence reflects the Wisemans did not willfully abandon Minor when they surrendered her to DSS shortly after she was discharged from MUSC-IOP. Richard testified DSS took Minor into custody "first because the Wisemans feared that [Minor] was going to harm them, and they did not want to allow her into the home" and because her therapist, her counselor, and the doctors at MUSC "recommended [Minor] be placed into an RTF." Likewise, Mother explained she was afraid to take Minor home because she had threatened to kill the Wisemans; Mother wanted Minor to get the help she needed before returning home and potentially making additional false allegations of abuse; and Mother believed DSS agreed to place Minor in its custody until a space was available at a residential treatment facility.
DSS caseworker Tara Cobb testified DSS became involved after receiving a report that Minor was at MUSC-IOP, and the Wisemans refused to take her home due to her behavior. However, Mother explained she and Father intended to support Minor while she received the treatment she needed so she *77 could return home. In fact, the Wisemans have never expressed that they did not want Minor to return home following the completion of her treatment. Contra id. (explaining "abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child" (quoting 2 Am. Jur. 2d Adoption § 32 ) ). To the contrary, the Wisemans have been very involved with Minor's treatment, participated in regular family counseling sessions, traveled to see her each week, followed the recommendations of her counselor and treatment team, and expressed their desire that Minor return home following the completion of her treatment.
Significantly, caseworker Richard's testimony at trial demonstrates DSS would not have returned Minor to her parents following her discharge from MUSC-IOP "because the recommendation was for her to go to an RTF." Richard confirmed that while Minor could have gone home with the Wisemans if a safety plan were in place, DSS would have asked for relative placement until the agency was able to complete its investigation. Richard further stated that while it was inappropriate at the time of trial, "[t]he agency's goal is for [Minor] to definitely be returned to the Wisemans" after she "complete[s] her treatment where she is at Palmetto."[7]
Our supreme court has explained that abandonment "does not include an act or course of condu[c]t by a parent which is done through force of circumstances or dire necessity." Id. (quoting 2 Am. Jur. 2d Adoption § 33 ). Here, undisputed testimony establishes the Wisemans were afraid to bring Minor home immediately following her discharge from MUSC-IOP due to her threats and past behavior. Further, it was DSS's own opinion that it was "too risky" for Minor to return home. Minor's entire treatment team recommended Minor be placed in an RTF upon her discharge from MUSC-IOP due to the severity of her emotional issues as well as the risk of harm to herself and others. Therefore, following our de novo review, we find the Wisemans' actions were compelled by the force of circumstances and dire necessity rather than any intent to abandon Minor.
Conclusion
For the foregoing reasons, we reverse the finding of abandonment and order that the Wisemans' entries be removed from DSS's database of abuse and neglect. We remand this matter to the family court as our opinion alters Minor's protective custody premised upon the finding of abandonment. Because we recognize that changes may have taken place of which we are unaware, we ask the family court to convene with all parties present, including any necessary therapists, to consider Minor's condition and whether it is now appropriate to release her from foster care back to her parents.
REVERSED AND REMANDED.
KONDUROS and HILL, JJ., concur.

The Wisemans adopted Minor when she was ten years old; at the time of the family court proceeding, Minor was thirteen.

According to Mother, the Wisemans previously warned Minor they would throw away Minor's iPad if she used it inappropriately-Minor's school had already disciplined her for using the iPad to email her fifteen-year-old boyfriend.

While Minor was at the neighbor's house, Mother was in contact with Minor's therapist, Sue King, who advised Mother to take Minor to MUSC-IOP for inpatient therapy.

Minor was diagnosed with several psychiatric disorders prior to her adoption.

As of July 27, 2017, Minor was still in treatment at Palmetto.

At the time of trial, Minor had been at Palmetto for approximately three months.

This court is perplexed with DSS's seeking of the abandonment finding under the facts of this case and in light of the caseworker's equivocal testimony, the treatment team's recommendations, and the caseworker's admission that DSS would not have returned Minor to the Wisemans immediately upon her release from MUSC-IOP because of the recommendation that minor be placed in a residential treatment facility. We recognize DSS was in a difficult position due to the lack of an available RTF bed and the federal funding requirement that DSS seek a finding of abandonment in situations such as this one. But, the Wisemans should not be penalized for bureaucratic hardships. Nor would this court seek to chill the willingness of prospective adoptive parents prepared to care for children suffering oppositional attachment disorder or other health issues.