797 S.E.2d 740

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,**

and

Sherry Powers, Edward Anthony Dalsing and Tammy Gaye Causey Dalsing, Intervenors,

v.

Erica SMITH and Andrew Jack Myers, Defendants,

Of whom Edward Anthony Dalsing, Tammy Gaye Causey Dalsing, and Erica Smith are Respondents,

and

Andrew Jack Myers is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2015-002045
Opinion No. 5472

Court of Appeals of South Carolina.

Heard October 19, 2016
Filed December 15, 2016
Withdrawn, Substituted and Refiled March 1, 2017
Certiorari Granted June 16, 2017

302

304

Melinda Inman Butler, of The Butler Law Firm, of Union; and Nathan James Sheldon, of The Law Office of Nathan J. Sheldon, LLC, of Rock Hill, for Appellant.

James Fletcher Thompson, of James Fletcher Thompson, LLC, of Spartanburg; and Larry Dale Dove, of Dove Law Group, LLC, of Rock Hill, for Respondents Edward A. Dalsing and Tammy G. Dalsing.

David E. Simpson, of South Carolina Department of Social Services, of Rock Hill, for Respondent South Carolina Department of Social Services.

Debra A. Matthews, of Debra A. Matthews, Attorney at Law, LLC, of Winnsboro, for Respondent Erica Smith.

Lindsey Ann McCallister, of Foster Care Review Board, of Columbia, for Respondent Foster Care Review Board.

Brenda L. Gorski, of South Carolina Guardian ad Litem Program, of Columbia, for the Guardian ad Litem.

Erick Matthew Barbare, of The Barbare Law Firm, of Greenville, for Intervenor Sherry Powers.

PER CURIAM:

Appellant Andrew Jack Myers (Father) appeals a family court order terminating his parental rights to his minor daughter (Child) and granting an adoption of Child to Respondents Edward and Tammy Dalsing (Foster Parents). On appeal, Father argues the family court erred by (1) finding his consent was not required for Child's adoption, (2) terminating his parental rights, (3) granting adoption to Foster Parents while finding they lacked standing to file an adoption petition, (4) allowing Foster Parents to be parties to this action, and (5) finding Child's permanent plan should be termination of parental rights (TPR) and adoption.[1] We vacate in part, reverse in part, and remand for a new permanency planning hearing.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their

---

1. The family court also terminated the parental rights of Erica Smith (Mother), but she has not appealed.

credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52.

██ Initially, we find the issue of Foster Parents' intervention in the removal action brought by the Department of Social Services (DSS) is not properly before this court. The October 8, 2014 order allowing Foster Parents to intervene in the DSS action was by agreement; having consented to the intervention, Father cannot now challenge it on appeal. *See Hooper v. Rockwell*, 334 S.C. 281, 290, 513 S.E.2d 358, 363 (1999) (providing a party "may not appeal [a] consent order because such orders are not appealable").

██ Next, we find the family court erred by considering adoption once it determined Foster Parents did not have standing to file an adoption action.[2] Once the family court determined Foster Parents did not have standing to file an adoption petition, the issue of adoption was not before the family court, and the family court did not have the authority to consider it. *See Youngblood*, 402 S.C. at 317, 741 S.E.2d at 518 (noting standing is "a fundamental prerequisite to instituting an action"); Rule 2(a), SCRFC (limiting the applicability of Rule 54(c), SCRCP, in family court actions "to the extent it permits the court to grant relief not requested in the pleadings"); *Bass v. Bass*, 272 S.C. 177, 179–80, 249 S.E.2d 905, 906 (1978) (finding the family court erred as a matter of law in

---

2. Foster Parents did not appeal the family court's finding that they lacked standing to file an adoption petition; thus, this unappealed ruling is the law of the case. *See Ex parte Morris*, 367 S.C. 56, 65, 624 S.E.2d 649, 653–54 (2006) (stating an "unappealed ruling is the law of the case and requires affirmance"). Further, under the rationale of *Youngblood v. South Carolina Department of Social Services*, the family court properly found Foster Parents did not have standing to file an adoption petition. *See* 402 S.C. 311, 317, 741 S.E.2d 515, 518 (2013) ("Standing, a fundamental prerequisite to instituting an action, may exist by statute, through the principles of constitutional standing, or through the public importance exception."); *id.* at 318, 741 S.E.2d at 518 ("[W]hile section 63-9-60(A) [of the South Carolina Code (2010)] broadly grants standing [to file an adoption petition] to 'any South Carolina resident,' section 63-9-60(B) makes that grant of standing inapplicable to a child placed for adoption by DSS." (quoting § 63-9-60(A))); *id.* at 322, 741 S.E.2d at 520 ("[T]he foster parent relationship, absent statutory law to the contrary, is insufficient to create a legally protected interest in a child and therefore, does not create standing to petition to adopt.").

awarding the wife business compensation when she did not assert a claim for compensation in the pleadings); *id.* at 180, 249 S.E.2d at 906 ("While it is true that pleadings in the family court must be liberally construed, this rule cannot be stretched so as to permit the judge to award relief not contemplated by the pleadings." (footnote omitted)). We acknowledge that in certain instances, the family court may award relief not requested in pleadings. For example, Rule 17(a), SCRFC, permits a defaulting defendant to "be heard at the merits hearing on issues of custody of children, visitation, alimony, support, equitable distribution, and counsel fees." However, we find this rule does not extend to permit the family court to sua sponte consider adoption when the party requesting it does not have standing to make such a request. Because adoption is contrary to common law, our supreme court mandates that statutes authorizing adoption must be strictly construed. *See Hucks v. Dolan*, 288 S.C. 468, 470, 343 S.E.2d 613, 614 (1986) ("The adoption of a child was a proceeding unknown to the common law. Adoption exists in this state only by virtue of statutory authority which expressly prescribes the conditions under which an adoption may legally be effected. Since the right of adoption in South Carolina is not a natural right but wholly statutory, it must be strictly construed." (citation omitted)). Thus, the family court erred in granting the adoption of Child to Foster Parents once it determined they did not have standing to file the adoption petition. Further, because the issue of Father's consent to the adoption was tied to the adoption, we find it was not properly before the family court. Therefore, we vacate the family court's finding that Father's consent was not required for the adoption and the family court's order granting Foster Parents adoption of Child.

■ Additionally, we agree with Father that the family court erred by terminating his parental rights with regard to Child because Foster Parents failed to prove by clear and convincing evidence that a statutory ground for TPR existed.[3]

---

3. Although the family court properly determined Foster Parents lacked standing to file an adoption petition, the statutes governing TPR allow for foster parents to file TPR petitions. *See* S.C. Code Ann. § 63-7-2530(A) (Supp. 2016) (providing "any interested party" may file a TPR petition); S.C. Code Ann. § 63-7-20(17) (Supp. 2016) (providing "[p]ar-

The family court may terminate parental rights only when a statutory ground for TPR exists and TPR is in the child's best interest. S.C. Code Ann. § 63-7-2570 (Supp. 2016). Under our statutory framework, for the family court to order TPR, it must find a statutory ground for TPR; it is not enough to find only that TPR is in the child's best interest. *Charleston Cty. Dep't of Soc. Servs. v. Jackson*, 368 S.C. 87, 97, 627 S.E.2d 765, 771 (Ct. App. 2006); *see also Loe v. Mother, Father, & Berkeley Cty. Dep't of Soc. Servs.*, 382 S.C. 457, 471, 675 S.E.2d 807, 815 (Ct. App. 2009) ("The [twelve] statutory grounds serve as a safety net that protects a fit and willing parent's fundamental right to raise his or her child. Even if the [f]oster [p]arents are perhaps better situated than [the parent] to offer advantages to [the children], we believe the fundamental right of a fit parent to raise his or her child must be vigorously protected."). Indeed, the Supreme Court of the United States has strongly indicated any attempt by a state to terminate parental rights based solely upon a showing of the child's best interest would be a Constitutional violation. *See Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) ("We have little doubt that the Due Process Clause would be offended '[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.' " (alteration in original) (quoting *Smith v. Org. of Foster Families*, 431 U.S. 816, 862–63, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977))).

█ Also, to terminate parental rights, the family court must find clear and convincing evidence proves the existence of a statutory ground. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999). Our supreme court has long recognized and required clear and convincing evidence to terminate a parent's rights in his or her child. *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 335, 741 S.E.2d 739, 745 (2013). Moreover, the Supreme Court of the United States has held a state may not completely and

ty in interest" includes a foster parent); *Dep't of Soc. Servs. v. Pritchett*, 296 S.C. 517, 520–21, 374 S.E.2d 500, 501–02 (Ct. App. 1988) (finding the Children's Code indicates foster parents have standing as interested parties to file TPR petitions).

irrevocably sever the rights of parents in their natural child unless the allegations against those parents are proven by at least clear and convincing evidence. *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Understanding the "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment," the *Santosky* court explained the clear and convincing standard of proof was required "when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.' " 455 U.S. at 753, 756, 102 S.Ct. 1388 (quoting *Addington v. Texas*, 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). The *Santosky* court noted further that such a level of certainty is "necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty' or 'stigma.' " *Id.* at 756, 102 S.Ct. 1388 (quoting *Addington*, 441 U.S. at 425–26, 99 S.Ct. 1804).

Indeed, the fundamental liberty interest at issue in an action for TPR is a highly cherished right. *See id.* at 758–59, 102 S.Ct. 1388 (declaring it "plain beyond the need for multiple citation" that a parent's "desire for and right to 'the companionship, care, custody, and management of his or her children' " is a fundamental interest "far more precious than any property right" (quoting *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981))). Consideration of an action for TPR is all the more perilous considering the irreversible nature of TPR. *See id.* at 759, 102 S.Ct. 1388 ("When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it."). Thus, as noted in *Santosky*, "[f]ew forms of state action are both so severe and so irreversible." *Id.*

Moreover, the public policy of South Carolina, as declared by the legislature and DSS, is for the reunification of biological families. *See* S.C. Code Ann. § 63-1-20(D) (2010) ("It is the policy of this State to reunite the child with his family in a timely manner, whether or not the child has been placed in the care of the State voluntarily."). Additionally, our appellate courts have repeatedly held incarceration alone does not justi-

fy terminating parental rights. *See Jackson*, 368 S.C. at 97, 627 S.E.2d at 771 ("Incarceration alone is insufficient to justify TPR."); *S.C. Dep't of Soc. Servs. v. Ledford*, 357 S.C. 371, 376, 593 S.E.2d 175, 177 (Ct. App. 2004) (recognizing incarceration alone does not justify TPR).

In this case, the family court determined Foster Parents proved, by clear and convincing evidence, three statutory grounds for TPR: abandonment, willful failure to visit, and willful failure to support. After a thorough review of the record, we find the family court erred because Foster Parents failed to show the existence of any statutory ground by clear and convincing evidence.

 The record did not contain clear and convincing evidence showing Father willfully abandoned Child. A statutory ground for TPR is met when the parent abandons his child. S.C. Code Ann. § 63-7-2570(7) (Supp. 2016). " 'Abandonment of a child' means a parent or guardian [willfully] deserts a child or [willfully] surrenders physical possession of a child without making adequate arrangements for the child's needs or the continuing care of the child." S.C. Code Ann. § 63-7-20(1) (2010). Willful conduct is that which "evinces a settled purpose to forego parental duties." *S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 610, 582 S.E.2d 419, 423 (2003). "Willfulness is a question of intent to be determined by the facts and circumstances of each case." *Ledford*, 357 S.C. at 375, 593 S.E.2d at 177 (quoting *S.C. Dep't of Soc. Servs. v. Wilson*, 344 S.C. 332, 336, 543 S.E.2d 580, 582 (Ct. App. 2001)).

In this case, when Father learned Mother was pregnant with Child, he had outstanding warrants, and he voluntarily surrendered to the police. Both Mother and Father's mother, Sherry Powers (Grandmother), testified Father surrendered so he could begin his sentence and be released as soon after Child's birth as possible and avoid having outstanding warrants hanging over his head after Child's birth. This uncontradicted evidence alone is significant evidence showing Father's intent to be a parent to Child and weighs against a finding that Father evinced a settled purpose to forego parental duties by abandoning Child. *See Headden*, 354 S.C. at 610, 582 S.E.2d at 423 (explaining willful conduct is that which "evinces a settled purpose to forego parental duties").

However, Father also engaged in other activity while serving his sentence that reveals an intent to be a parent to Child and suggests any abandonment was not willful. Shortly after Child's birth, Father voluntarily signed a paternity acknowledgment. Father also obtained a DNA test to prove paternity even though DSS failed to coordinate the test. Father and Grandmother were forced to obtain the DNA test with no assistance from DSS even though Father was incarcerated. According to Grandmother, Father wanted to proceed quickly with the DNA test without waiting for DSS's assistance and stated, "I don't want my daughter living in foster care the rest of her life."

At some point during this process, Father sent a letter to Child's guardian ad litem, Stephanie Kitchens (GAL), stating his desire to have a relationship with Child. The GAL could not recall the date she received this letter. Also, the GAL sent Father a questionnaire "a couple of months" prior to the final hearing, and Father "responded with[in] a week's time" with answers to the GAL's questions.

Additionally, and significantly, Father sent DSS a letter in which he expressed a desire to visit Child. He acknowledged he was unable to visit while incarcerated but stated multiple times he would be able to visit if and when Child was placed with Grandmother. Father stated he "hope[d] and pray[ed]" DSS would place Child with Grandmother "soon" to allow him to visit Child. The letter also explained Father asked Grandmother to cease sending him $50 per month for food and to "use it for [Child's] needs." Moreover, Father requested Foster Parents' telephone number so that he could contact Child. However, there is no evidence in record showing DSS ever provided Father with Foster Parents' contact information. Furthermore, Father sent Child a birthday card through his attorney, and he sent his attorney at least one letter asking for an update on the case.

In sum, Father (1) voluntarily started his prison term early so he could complete the sentence as soon as possible, (2) sent a letter to the DSS caseworker expressing his desire to visit Child, (3) asked for Foster Parents' telephone number so he could call Child, (4) asked Grandmother to use $50 per month to support Child instead of sending it to Father in prison, (5)

sent a letter to his attorney asking for an update on the case, (6) voluntarily signed an affidavit acknowledging paternity, (7) obtained a DNA test proving paternity even though DSS failed to assist with the test, (8) sent a letter to the GAL seeking to pursue a relationship with Child, (9) completed and returned a questionnaire from the GAL within one week, and (10) sent Child a birthday card expressing his love for Child. Under these facts and circumstances, clear and convincing evidence does not exist to show Father willfully abandoned Child by evincing an intent or settled purpose to forego parental duties. Thus, the family court erred by finding a statutory ground for TPR existed based on willful abandonment.

Furthermore, the record did not contain clear and convincing evidence showing Father willfully failed to visit Child. A statutory ground for TPR is met when

[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has [willfully] failed to visit the child. The court may attach little or no weight to incidental visitations, but it must be shown that the parent was not prevented from visiting by the party having custody or by court order. The distance of the child's placement from the parent's home must be taken into consideration when determining the ability to visit.

S.C. Code Ann. § 63-7-2570(3) (Supp. 2016). "Whether a parent's failure to visit or support a child is [willful] is a question of intent to be determined by the facts and circumstances of each case." *Wilson,* 344 S.C. at 336, 543 S.E.2d at 582. "Conduct of the parent which evinces a settled purpose to forego parental duties may fairly be characterized as 'willful' because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." *S.C. Dep't of Soc. Servs. v. Broome,* 307 S.C. 48, 53, 413 S.E.2d 835, 839 (1992). Willfulness "means that the parent must not have visited due to her own decisions, rather than being prevented from doing so by someone else." *Broom v. Jennifer J.,* 403 S.C. 96, 114, 742 S.E.2d 382, 391 (2013).

"To determine whether a parent's failure to support or visit during the time of incarceration evinces a settled purpose to forego parental responsibilities requires a compre-

hensive analysis of all of the facts and circumstances." *Wilson*, 344 S.C. at 339, 543 S.E.2d at 584. "The voluntary pursuit of lawless behavior is one factor which may be considered, but generally is not determinative." *Id.* at 340, 543 S.E.2d at 584. The family court is not limited to considering the months immediately preceding TPR when determining whether a parent willfully failed to visit. *Headden*, 354 S.C. at 611, 582 S.E.2d at 424. Rather, the family court should consider all relevant conduct by the parent. *Id.*

Here, as noted above, Father (1) voluntarily started his prison term early so he could complete the sentence as soon as possible, (2) sent a letter to the DSS caseworker expressing his desire to visit Child, (3) asked for Foster Parents' telephone number so he could call Child, (4) sent a letter to his attorney asking for an update on the case, (5) voluntarily signed an affidavit acknowledging paternity, (6) obtained a DNA test proving paternity even though DSS failed to assist with the test, (7) sent a letter to the GAL asserting he would like to pursue a relationship with Child, (8) completed and returned a questionnaire from the GAL within one week, and (9) sent Child a birthday card expressing his love for Child.

Additionally, Stacie Eison, one of the DSS caseworkers on Child's case, testified DSS would not allow Child to visit Father because he was in prison in another state. Eison confirmed DSS's policy also prohibited Foster Parents from taking Child to visit Father in another state. *See* § 63-7-2570(3) (stating "it must be shown that the parent was not prevented from visiting by the party having custody"). Furthermore, although Father requested Foster Parents' telephone number from DSS, there was no evidence DSS ever provided Father with that information.

Moreover, Father repeatedly expressed his desire for Child to be placed with Grandmother throughout this process because placement with Grandmother would have facilitated visitation and communication with Child. *See Charleston Cty. Dep't of Soc. Servs. v. Marccuci*, 396 S.C. 218, 226, 721 S.E.2d 768, 773 (2011) (noting a parent's attempts to obtain placement with a relative to facilitate visitation weighed against finding a settled purpose to forego parental duties). Father claimed his motivation for placement with Grandmother was, in part,

because it would allow him to have visitation with Child. Multiple witnesses testified to the difficulties Grandmother encountered, which were out of her and Father's control, during her attempts to obtain temporary custody of Child. Grandmother complied with multiple home studies during 2014 and 2015, and all of them were positive. Grandmother obtained at least one study at her expense in an effort to expedite the process. Eison testified Grandmother contacted DSS multiple times per month regarding placement. Eison admitted the delay was DSS's fault because she needed help with the paperwork.

Furthermore, Eison testified she believed Child should be placed with Grandmother, and in October 2014, she sent Foster Parents a letter informing them DSS would remove Child from their home and place her with Grandmother. *See* S.C. Code Ann. § 63-7-1680(E)(1) (Supp. 2016) ("In the absence of good cause to the contrary, preference must be given to placement with a relative or other person who is known to the child and who has a constructive and caring relationship with the child...."). Multiple witnesses testified regarding Grandmother's frequent visitation and the strong bond between Grandmother and Child. In response to DSS's letter, Foster Parents filed an administrative appeal challenging Child's removal from their home. Had it not been for Foster Parents' administrative appeal, DSS could have placed Child with Grandmother in November 2014, which would have facilitated visitation and communication between Father and Child. As a result, Foster Parents' zealous pursuit of this litigation prevented, at least to some degree, Father's ability to visit and communicate with Child. *See* § 63-7-2570(3) (stating "it must be shown that the parent was not prevented from visiting by the party having custody"); *Jennifer J.*, 403 S.C. at 114, 742 S.E.2d at 391 (explaining willful failure to visit "means that the parent must not have visited due to her own decisions, rather than being prevented from doing so by someone else").

 Although we recognize the valuable contribution foster parents make to this state, it does not weaken Father's fundamental right to raise Child or allow us to lessen Foster Parents' burden of proving the existence of a statutory ground for TPR by clear and convincing evidence. Our judicial system will not extirpate Father's fundamental right to custody, care,

and companionship with Child simply because he has not been a model parent. *See Santosky,* 455 U.S. at 753, 102 S.Ct. 1388 ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life.").

Accordingly, Father expressed his desire to visit Child to multiple people throughout this process and requested a telephone number he could use to contact Child. Considering Father's expressed desire to visit or, at a minimum, contact Child along with the other facts and circumstances noted above, we cannot say clear and convincing evidence existed to show Father's failure to visit was willful or evinced a settled purpose to forego parental duties. *See Headden,* 354 S.C. at 610, 582 S.E.2d at 423 (explaining willful conduct is that which "evinces a settled purpose to forego parental duties").

To the extent Father's incarceration was the result of his own lawless conduct, Father committed his criminal actions prior to Mother becoming pregnant with Child, and he surrendered after learning of the pregnancy so that he could begin his sentence immediately. *See Wilson,* 344 S.C. at 340, 543 S.E.2d at 584 ("The voluntary pursuit of lawless behavior is one factor which may be considered, but generally is not determinative."). As a result, Father's lawless conduct in this case was not highly probative of willfulness. Therefore, after reviewing all of the facts and circumstances in the record, we find the family court erred by determining a statutory ground for TPR existed based on a willful failure to visit.

Finally, the record did not contain clear and convincing evidence showing Father willfully failed to support Child. A statutory ground for TPR is met when

[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has [willfully] failed to support the child. Failure to support means that the parent has failed to make a material contribution to the child's care. A material contribution consists of either financial contributions according to the parent's

means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parent's means. The court may consider all relevant circumstances in determining whether or not the parent has [willfully] failed to support the child, including requests for support by the custodian and the ability of the parent to provide support.

S.C. Code Ann. § 63-7-2570(4) (Supp. 2016).

■■■■■ Although section 63-7-2570(4) references a six month period, a party seeking TPR under this statutory ground may not merely point to any six month period in which a parent willfully failed to support. Under our case law, "[a] parent's earlier failure to support may be cured by the parent's subsequent repentant conduct. Once conduct constituting a failure to support is shown to have existed, the court must then determine whether the parent's subsequent conduct was of a sufficient nature to be curative." *S.C. Dep't of Soc. Servs. v. Cummings*, 345 S.C. 288, 296, 547 S.E.2d 506, 510 (Ct. App. 2001) (citation omitted). Importantly, the most relevant inquiry remains whether the parent's failure to support, after reviewing all of the facts and circumstances, was willful or evinced a settled purpose to forego parental duties. *See Headden*, 354 S.C. at 610, 582 S.E.2d at 423 (explaining willful conduct is that which "evinces a settled purpose to forego parental duties"); *Cummings*, 345 S.C. at 296, 547 S.E.2d at 511 (focusing on repentant conduct and noting it "must be considered together with all [of] the relevant facts and circumstances").

Here, the family court may have been warranted in finding Father willfully failed to support Child from her birth in May 2013 until approximately April 2014. During this time, Father had access to a total of $1,841 in his prison account but did not send any of those funds to Child. However, even if Father willfully failed to support Child between May 2013 and April 2014, his repentant conduct after April 2014 cured his earlier failure to provide support for Child.

Father's letter to DSS stated he told Grandmother to stop sending $50 per month to his prison account and instead use it to support Child. Grandmother also testified that Father asked her to use the $50 per month to support Child, and there was no evidence in the record to clearly dispute this

allegation. Grandmother testified she provided Child with clothes, shoes, diapers, and wipes in addition to toys, a purse, a glasses case, and an Easter basket. She asserted she spent approximately $40-50 each month she visited Child. Although Foster Parents implied Grandmother failed to spend a full $50 per month to support Child, they admitted Grandmother provided items such as diapers. The final hearing was not held until July 2015, which meant, if Father's and Grandmother's claims were true, Father effectively spent $40-50 per month to support Child for over one year. We find no case law in this state prohibiting the family court from considering a parent's support made through a third party as part of all of the facts and circumstances that could provide insight on the issue of willfulness.

These actions by Father and Grandmother showed a strong desire by Father to support Child and, at a minimum, refuted any assertion that Father's conduct evinced a settled purpose to forego his parental duties. This conduct was sufficient to cure any earlier willful failure to support by Father. *See id.* at 296, 547 S.E.2d at 510 ("Once conduct constituting a failure to support is shown to have existed, the court must then determine whether the parent's subsequent conduct was of a sufficient nature to be curative."). Additionally, Father was not under a court order to provide support, and the foster parents never requested any support from Father. *See* § 63-7-2570(4) ("The court may consider all relevant circumstances in determining whether or not the parent has [willfully] failed to support the child, including requests for support by the custodian and the ability of the parent to provide support."). Combining Father's repentant conduct with the other facts and circumstances discussed in the previous sections, we cannot say clear and convincing evidence showed Father willfully failed to support Child. Thus, the family court erred by finding a statutory ground for TPR existed based on a willful failure to support.

Based on the foregoing, we vacate in part, reverse in part, and remand for a new permanency planning hearing pursuant to section 63-7-1700 of the South Carolina Code (Supp. 2016). A permanency planning hearing will allow all parties and the GAL an opportunity to update the family court on what has occurred since the TPR hearing. We urge the family court to

conduct a hearing as expeditiously as possible, including presentation of a new GAL report and an updated home evaluation. If necessary, the family court may, inter alia, change custody, modify visitation, and approve a treatment plan offering services to Father.

**VACATED IN PART, REVERSED IN PART, AND REMANDED.**

WILLIAMS, THOMAS, and GEATHERS, JJ., concur.